Roberto BENEVIDEZ *v.* STATE of Arkansas

CR 02-611                                        101 S.W.3d 242

Supreme Court of Arkansas
Opinion delivered March 20, 2003

*William R. Simpson, Jr.*, Public Defender, by: *Clint Miller*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

Jim Hannah, Justice. A Pulaski County jury convicted Appellant Roberto Benavidez of the capital murder of Daniela Araujo-Hernandez and sentenced him to life imprisonment. His sole claim on appeal is that the trial court erred by denying his motion to suppress because the Georgia police officers who arrested him did so by making a "search warrantless" entry

into a third party's home without having a reasonable belief that the home was Benavidez's residence. We hold that the trial court's denial of Benavidez's motion to suppress was not clearly erroneous and, accordingly, we affirm. We have jurisdiction of this case pursuant to Ark. Sup. Ct. R. 1-2(a)(2) (2002).

*Facts*

On August 3, 2000, Benavidez filed a motion to suppress evidence, alleging that members of the Chamblee Police Department of Chamblee, Georgia, conducted a warrantless search of a residence where he had rented a room. Benavidez alleged that during a search of the room he occupied, certain items were discovered and seized by the police in violation of his Fourth and Fourteenth Amendment rights.

At the suppression hearing, the following testimony was adduced. Following the murder, Benavidez left Arkansas, and officers investigating the murder obtained information that Benavidez was staying in Georgia. On November 4, 1999, Ellis Westbrooks, a sergeant of the Chamblee Police Department, in Chamblee, Georgia, received a copy of a warrant authorizing Benavidez's arrest for capital murder from the Jacksonville Police Department in Jacksonville, Arkansas. The Jacksonville police informed Westbrooks that Benavidez was staying at 3554 Shallowford Road, Apartment E-11, in Chamblee. The Jacksonville police also informed Westbrooks that Benavidez was driving a 1989 blue, two-door Pontiac Grand Am with Arkansas plates. In addition, the Jacksonville police provided a picture of Benavidez to the Chamblee police and told the officers that Benavidez might be armed.

Lieutenant Peabody, an officer of the Chamblee Police Department, located Benavidez's car in the parking lot of the apartment complex located at 3554 Shallowford Road. Peabody called Westbrooks and told him that he had spotted the vehicle, and Peabody and Westbrooks, along with another Chamblee police officer, went to Apartment E-11, at the Shallowford Arms apartment complex and knocked on the door.

An Asian female answered the door, and the officers told the woman that they had a warrant to arrest Benavidez. She pointed to the bedroom. The officers went to the bedroom and found two men sleeping on the floor of an unfurnished room. The officers

turned on the light and woke up the two men in the room. Using the picture provided by the Jacksonville police, Westbrooks identified Benavidez as one of the persons in the room.

Benavidez was not wearing a shirt and, since it was cold outside, Westbrooks reached into an open closet to get a shirt for Benavidez. When Westbrooks reached for the shirt, he saw an identification card and pulled it out. Westbrooks looked at the identification card and gave it to Peabody. Westbrooks again reached for the shirt and when he grabbed it, he found a .380 caliber pistol. Benavidez was then placed under arrest.

Benavidez stated that at the time he was arrested, he had been living at the apartment for four days. He stated that he was staying at the apartment with the permission of the Asian woman who lived there. According to Benavidez, after he met someone "in the street" and asked where he could rent a place to live, he was told to go to the apartment where the Asian woman lived. Benavidez testified that he paid $125.00 to stay in the apartment, and that the only belongings he had in the apartment were some clothing, his identification card, and a .380 caliber pistol.

At the suppression hearing, Benavidez argued that he had standing to contest the "search." He also argued that the arrest warrant alone, without proper consent or exigent circumstances, was not enough to allow officers to enter the apartment. In addition, Benavidez argued that the officers did not have reasonable belief that their safety was at issue or that there was any need for a protective sweep.

At the conclusion of the hearing, the trial court made several findings. The trial court held that Benavidez did have standing to assert a Fourth Amendment violation. The trial court found that Westbrooks's discovery of the gun was inadvertent, that it met the requirements of a plain-view search, and that Westbrooks was in a place where he lawfully had a right to be. The trial court also found that the issue of whether the woman answering the door gave consent for the officers to enter was irrelevant because the officers had an arrest warrant. Benavidez's motion to suppress was denied.

### Standard of Review

When reviewing a motion to suppress, the court makes an independent determination based on the totality of the

circumstances and reviews the evidence in the light most favorable to the appellee. *Howell v. State*, 350 Ark. 552, 89 S.W.3d 343 (2002). We note that the arrest and seizure of evidence took place in Georgia. This court has previously held that Mississippi law applies to determine whether an arrest was valid in a situation where an Arkansas defendant was arrested in Mississippi. *See Criddle v. State*, 338 Ark. 744, 1 S.W.3d 436 (1999); *Jackson v. State*, 241 Ark. 850, 410 S.W.2d 766 (1967). In the present case, we must look to Georgia law, to the extent that it does not conflict with the United States Constitution, to determine the reasonableness of the officers' conduct in executing the arrest warrant and seizing the evidence.

In determining the lawfulness of law enforcement officers' conduct, Georgia follows the approach taken by the United States Supreme Court, stating that "the touchstone of the Fourth Amendment is reasonableness." *Padron v. State*, 562 S.E.2d 244, 247 (Ga. Ct. App. 2002) (citing *Florida v. Jimeno*, 500 U.S. 248, 250 (1991)). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996).

We give respectful consideration to the findings of the trial court, and we must defer to the superior position of the trial court to pass upon the credibility of witnesses. *Davis v. State*, 351 Ark. 406 (2003) (citing *State v. Osborn*, 263 Ark. 554 (1978)). We will reverse only if the trial court's ruling on a motion to suppress is clearly erroneous. *Howell, supra.*

Benavidez concedes that the Georgia police officers who arrested him had a valid arrest warrant; however, he argues that the trial court should have granted his motion to suppress evidence because the Georgia police officers did not have a valid search warrant. In *Steagald v. United States*, 451 U.S. 204 (1981), the United States Supreme Court held that, although an arrest warrant carries with it the authority to enter a suspect's residence to arrest him or her, it does not give the authority to enter the residence of a third party to search for the subject of the arrest warrant, absent consent or exigent circumstances.[1] However, in *Payton v. New York*, 445 U.S. 573, 603 (1980), the Court stated that

---

[1] We note that the facts in the present case are distinguishable from the facts in *Steagald v. United States*, 451 U.S. 204 (1981). In *Steagald*, the Court stated: "The issue

for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.

In the present case, there is no dispute that the arrest warrant for Benavidez was founded on probable cause. With the valid warrant, the Chamblee officers had the authority to enter the apartment where Benavidez was living if the officers had reason to believe that Benavidez lived in the apartment and that Benavidez was present in the apartment at the time the warrant was executed.

Clearly, the officers had reason to believe that Benavidez was present in the apartment at the time the warrant was executed. The Jacksonville police had informed Westbrooks that Benavidez was staying at 3554 Shallowford Road, Apartment E-11, in Chamblee, and Westbrooks had been told that Benavidez was driving a 1989 blue, two-door Pontiac Grand Am with Arkansas plates. While on patrol, Lieutenant Peabody located Benavidez's car in the parking lot of the apartments located at 3554 Shallowford Road and called Westbrooks and told him that he had spotted the vehicle.

Benavidez argues that

> the State may attempt to argue that the apartment was Appellant Benavidez's residence and, therefore, with a valid arrest warrant the police could enter his residence and arrest him. If the State makes such an argument, it must inevitably depend on facts discovered by the Georgia police while or after they arrested Appellant Benavidez. Such after-the-fact evidence will not support the State's argument. According to the *Payton* rule, the police must have a reasonable belief *before* they enter the defendant's residence that the residence is, in fact, the defendant's residence.

When asked what information he had pertaining to who was living at the apartment, Westbrooks stated: "We didn't have any information who was living at the apartment; that he may be there. If we found the car there, he probably would be staying there." At issue is whether the arrest for Benavidez provided the

here . . . is not whether the subject of an arrest warrant can object to the absence of a search warrant [for] . . . another person's home, but rather whether the residents of that home can complain of the search." 451 U.S. at 219.

police officers with legal authority to enter the apartment, thereby validating the seizure of evidence that was in plain view.

From the totality of the circumstances, it was reasonable for the Georgia police to believe prior to the execution of the arrest warrant that Benavidez was both living in Apartment E-11 and actually present inside the apartment. The Georgia police officers had received information from the Jacksonville police that Benavidez was driving a 1989 blue, two-door Pontiac Grand Am with Arkansas plates, and that if the car was at the apartment complex located at 3554 Shallowford Road, Chamblee, Georgia, then Benavidez probably would be staying in Apartment E-11. Subsequent to receiving this information, the Georgia police officers discovered the subject car parked at the subject apartment complex.

■ The trial court's denial of Benavidez's motion to suppress was not clearly erroneous. The officers reasonably believed that Benavidez was residing at the apartment and they reasonably believed that Benavidez was present at the apartment at the time they went to execute the warrant. The officers entered the bedroom where Benavidez was sleeping and positively identified him. Westbrooks reached into an open closet to get a shirt for Benavidez; there is no evidence that he was conducting a search when he reached into the closet. Westbrooks inadvertently discovered the gun and identification card, which were wrapped in the shirt. The gun and the identification card were in plain view. The seizure of the evidence in plain view was valid.

*Rule 4-3(h) Review*

In compliance with Ark. Sup. Ct. R. 4-3(h), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Benavidez, and no error has been found.

Affirmed.

GLAZE, J., concurs.

CORBIN, J., not participating.