2012 Ark. 37

**Lesa Diane MENNE, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CR 10–1304.**

Supreme Court of Arkansas.

Feb. 2, 2012.

Richard Jarboe, Walnut Ridge, for appellant.

Dustin McDaniel, Atty. Gen., Eileen W. Harrison, Office of Atty. Gen., Little Rock, for appellee.

ROBERT L. BROWN, Justice.

Appellant Lesa Diane Menne appeals from the circuit court's denial of her motion to suppress evidence recovered in a search of her vehicle after she was stopped for a traffic violation. We affirm the circuit court's ruling.

On October 19, 2008, Trooper Phillip Roark of the Arkansas State Police pulled over a pickup truck driven by Menne at approximately 10:57 p.m. outside of Walnut Ridge. Roark initiated the stop because Menne was traveling fifty-five miles per hour in a forty-five-mile-per-hour zone. According to the affidavit Roark filed after the stop, the truck was driven by Menne and had one passenger, Christopher Smith. In the affidavit, Roark says that Menne "appeared nervous," that he had "arrested Christopher Smith in the same vehicle on [September 20, 2008] for DWI–Drugs and Possession of Marijuana," that he "located drugs in this same vehicle" during Smith's arrest, and that he had "information from the Walnut Ridge Police Department that Menne was a suspected drug dealer." Roark concludes, in his affidavit, "[t]aking this into consider-

ation, I asked for consent to search, which was granted by Menne."

Roark searched Menne's vehicle and found .0536 grams of marijuana, .0348 grams of methamphetamine, and a prescription bottle with the label torn off. Menne was charged with possession of marijuana, possession of drug paraphernalia, and possession of methamphetamine, a felony.[1] She then moved to suppress the items seized on grounds that the search was illegal. During the ensuing suppression hearing, Roark testified that after he pulled her over, she provided him with her license, registration, and all the documentation he requested. Nevertheless, because Menne "seemed to be nervous" and he had "information that she was dealing drugs," and "due to the time of night and the previous drug arrest with this vehicle," Roark called for a K–9 unit to conduct a dog sniff of the vehicle.

On cross-examination, Roark admitted that when he walked up to the vehicle during the traffic stop, he did not observe anything illegal. He also testified that he ran a driver's license check and "found out that she had a criminal record too." He could not recall, though, what the criminal record was for or what state it was from, and he admitted that when he called Menne's license in to the dispatcher, the dispatcher did not say anything about a criminal record.

Roark testified that about six to seven minutes into the stop, he had determined that Menne's driver's license was valid and at about nine to ten minutes into the stop he had determined that the vehicle was properly registered. After he had verified Menne's documentation, he stated that there was nothing further he needed to do to investigate the traffic violation other than to give Menne her paperwork and a warning citation he had already written but had not yet given to Menne to sign.

Roark further testified that after verifying all of Menne's documentation, he asked her to step out of the truck approximately thirteen minutes into the stop. He stated that he next requested that Menne consent to a search of her vehicle. This was about fourteen minutes into the stop. He conceded that at some point, Menne said something to the effect of "this is harassment," although he added that she only said that one time. He proceeded to testify that Menne said he could "go ahead and look." After she consented, Roark stated that he found in the truck .0368 grams of methamphetamine, .05 grams of marijuana, and a prescription pill bottle with the label torn off. Roark testified that he had not returned Menne's vehicle registration to her and that he had not had her sign the warning ticket before asking for consent to search the vehicle.

Menne relayed facts different from Roark at the suppression hearing. She testified that Roark returned all of her documents to her eight or nine minutes into the stop. She said that when Roark asked for consent to search her vehicle, she asked him "for what and why." She said that Roark told her he had "probable cause because of [Smith] being with me." Menne further said that it was her understanding that Roark "was going to [search] no matter what I said." Menne added that she told Roark four times she felt like she was being harassed and that she never voluntarily consented to a search of the vehicle. On cross-examination, Menne said that she told Roark he could not search her vehicle the first two times he asked, and she reiterated to him "you're harassing me." When Roark asked if she

---

1. The State did not pursue charges relating to the pills found in the prescription bottle after Menne produced a valid prescription.

cared if he searched her vehicle, she denied ever saying "no, I don't guess I do," or "go ahead and look." During her testimony, the prosecutor repeatedly played a video and audio made by Roark of the stop and asserted that a conversation to that effect could be heard on the video. In response, Menne testified that Roark had asked her "do you have anything in your vehicle," to which she responded, "no, I guess I don't."

After hearing all of the testimony and evidence, including the video and audio of the stop, and hearing argument from counsel, the circuit court denied the motion to suppress. The court gave no reason or explanation for doing so. After the subsequent jury trial, Menne was found guilty of possession of methamphetamine, possession of drug paraphernalia with the intent to use, and possession of marijuana. She was fined a total of $4500.00 for all of the charges and sentenced to thirty-six months' probation for the methamphetamine charge. On appeal, Menne challenges only the circuit court's denial of her motion to suppress. The court of appeals reversed the ruling of the circuit court, *Menne v. State*, 2010 Ark. App. 806, 379 S.W.3d 86, and this court granted the State's petition for review. When this court grants review, we do so as if the matter had been originally appealed to this court. *Brookshire v. Adcock*, 2009 Ark. 207, 307 S.W.3d 22.

■ In reviewing a circuit court's denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings. *Yarbrough v. State*, 370 Ark. 31, 36, 257 S.W.3d 50, 55 (2007) (citing *Mann v. State*,

357 Ark. 159, 161 S.W.3d 826 (2004)). We reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Yarbrough*, 370 Ark. at 36, 257 S.W.3d at 55 (citing *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001)).

Menne's principal argument is that she was illegally detained after the purpose of the traffic stop was complete in contravention of this state's case law and Arkansas Rule of Criminal Procedure 3.1. We first observe that Trooper Roark's initial stop was legal, and Menne does not appear to contest that issue on appeal. Roark testified that Menne was traveling fifty-five miles per hour in a forty-five-mile-per-hour zone. *See* Ark.Code Ann. § 27–51–201. The legality of the stop, accordingly, is not an issue in this appeal.

■ Two issues confront this court in the instant case. The first is whether the purpose of the traffic stop was over at the time Trooper Roark requested Menne's consent to search the vehicle. The second issue is whether Roark developed a reasonable suspicion during the course of the traffic stop that was a sufficient basis to detain Menne further. The parties agree that at the time Roark requested a consent to search, he had not given Menne the warning citation for speeding. According to Roark's testimony, he had not yet returned all of Menne's documents to her. Our case law suggests that a stop is not complete until the warning citation and other documents are delivered back to the driver. *See Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007) (holding that it was permissible for a police officer to ask for consent to search the vehicle when the officer had determined that he would issue a warning ticket but had not yet returned the driver's identification papers or issued that ticket); *see also Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004) (noting that the legitimate purpose of the traffic stop ended after the officer handed back

the driver's license and registration along with a warning ticket). Countering that, however, is Menne's assertion that the warning citation was not provided to her by Roark because he was waiting for the K–9 unit to begin the dog sniff. Because we conclude that Roark had reasonable suspicion to detain Menne, we need not resolve the first issue.

■■■ We conclude that Roark had reasonable suspicion to detain Menne pursuant to Rule 3.1 of our Arkansas Rules of Criminal Procedure. Rule 3.1 requires the officer to possess reasonable suspicion that the person is committing, has committed, or is about to commit a felony or a misdemeanor involving danger to persons or property. *Malone v. State*, 364 Ark. 256, 262–63, 217 S.W.3d 810, 814 (2005). The officer must develop reasonable suspicion to detain before the legitimate purpose of the traffic stop has ended. *Id.* at 263, 217 S.W.3d at 814 (citing *Burks v. State*, 362 Ark. 558, 210 S.W.3d 62 (2005)). Whether there is reasonable suspicion depends upon whether, under the totality of the circumstances, the police have "specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity." *Malone*, 364 Ark. at 263, 217 S.W.3d at 814 (citing *Laime v. State*, 347 Ark. 142, 155, 60 S.W.3d 464, 473 (2001)).

The factors that combined to give Roark a reasonable suspicion that Menne was engaged in criminal activity are (1) one month earlier he had stopped the same truck and arrested Menne's passenger, Christopher Smith, for DWI and possession of marijuana; (2) during a criminal history check, Roark discovered Menne had been previously arrested; (3) he had information from a local police department that Menne was suspected of drug dealing; (4) Menne was nervous; and (5) the time of night.

We are mindful that while one of these factors may not have been enough to lead to "reasonable suspicion," viewing the totality of these circumstances, we cannot say the circuit court erred in denying the suppression motion. *See, e.g., Laime*, 347 Ark. at 159, 60 S.W.3d at 475 (holding that under a totality-of-the-circumstances review, the officer legitimately entertained a reasonable suspicion of criminal activity but noting that mere nervousness, standing alone, was not sufficient to constitute reasonable suspicion of criminal activity and grounds for detention). Arkansas Code Annotated section 16–81–203 specifically mentions the demeanor of the suspect, knowledge of the suspect's background and character, time of night, and information received from third parties as factors to be considered by law enforcement officers to determine grounds for reasonable suspicion. *See* Ark.Code Ann. § 16–81–203(1), (3), (6), (9) (Repl.2005). There is no requirement under the statute that a police officer need to have personally observed any or all of these factors.

■■■ We further emphasize that the search by Roark occurred within fifteen minutes of the stop, even though the fifteen-minute time constraint under Rule 3.1 would not have begun running until after Roark completed his routine tasks associated with the traffic stop.[2] We hold that

---

2. As part of a valid traffic stop, a police officer may detain a traffic offender while the officer completes certain routine tasks, such as computerized checks of the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or warning. *Sims*, 356 Ark. at 514, 157 S.W.3d at 535 (citing *Laime*, 347 Ark. 142, 60 S.W.3d 464 (2001)). During this process, the officer may ask routine questions such as the driver's destination, the purpose of the trip, or whether the officer may search the vehicle. *Sims*, 356 Ark. at 514, 157 S.W.3d at 535. In addition, the officer may act on whatever information is volunteered. *Id.* This detention is unrelated to a detention under Arkansas Rule of Criminal Procedure 3.1. *Laime*, 347 Ark. 142, 157, 60 S.W.3d 464, 474.

Menne was reasonably detained at the time Roark made his request to search.

 Regarding the consent itself, the State had the burden of proving by clear and positive evidence that consent to a search was freely and voluntarily given and that there was no actual or implied duress or coercion. Ark. R.Crim. P. 11.1 (2008). Roark testified that when he asked Menne if he could search her vehicle, she responded, "if you want to, go ahead and look." Roark acknowledged that at some point Menne alleged that he was harassing her. According to Roark's testimony, after she made that allegation, he informed her that she had the right to refuse consent.[3] The video and audio of the stop does not contradict Roark's testimony. This exchange occurred while Roark and Menne were standing behind her truck on the side of the road.

 The circuit court apparently believed Roark's version of the events, which is supported by the video and audio. Hence, it denied Menne's motion to suppress. Credibility of witnesses is an issue for the finder of fact. R.M.W. v. State, 375 Ark. 1, 8, 289 S.W.3d 46, |₉51 (2008). We cannot say that the circuit court erred in finding that Menne's consent was voluntarily given and was not the product of harassment.

 Justice Baker's dissent is in error in two fundamental respects. First, it concludes that Roark impermissibly extended the traffic stop by not returning the warning ticket to Menne. Although this issue was summarily argued by Menne, her briefs to this court focused on the lack of reasonable suspicion for continued detention. To the extent that Menne argued that the legitimate purpose of the traffic stop ended before Roark requested consent to search, Menne does not support

that argument with citation to authority. We do not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. Roberts v. State, 324 Ark. 68, 71, 919 S.W.2d 192, 194 (1996). Moreover, this court has been resolute in stating that we will not make a party's argument for that party or raise an issue, sua sponte, unless it involves the trial court's jurisdiction. Hanlin v. State, 356 Ark. 516, 529, 157 S.W.3d 181, 189 (2004).

Next, Justice Baker's dissent argues that Roark did not have reasonable suspicion to detain Menne after the purpose of the traffic stop had ended. The stop, however, had not ended because the warning ticket had not been given to Menne. See, e.g., Yarbrough, 370 Ark. 31, 257 S.W.3d 50. But beyond that, the dissent says in its view the factors giving rise to Roark's reasonable suspicion did not pass muster. That, though, is not the standard of review. Rather, it is whether, after a de novo review of the totality of the circumstances, the |₁₀circuit court's ruling denying the motion to suppress is clearly against the preponderance of the evidence. Yarbrough, 370 Ark. at 36, 257 S.W.3d at 54. We do not think it was.

Chief Justice Hannah's dissent falls into something of the same trap. Whether the traffic stop had ended without the issuance of a warning citation was not developed on appeal by Menne. Moreover, this dissent surmises that Roark withheld issuing the citation to extend that stop. Roark's "belief" and any ulterior motive in this regard are not supported by the record.

---

3. Under Welch v. State, 364 Ark. 324, 219 S.W.3d 156 (2005), Roark was not required to advise Menne that she had the right not to consent to the search.

But regardless, Roark had reasonable suspicion to detain Menne as already discussed. After Menne's vehicle was stopped, with Smith as a passenger, Roark recollected that he had stopped the same vehicle and arrested Smith for drug-related offenses one month earlier. In addition, he had information from a local police department that Menne was involved in drug dealing. Roark also had knowledge of Menne's prior arrest. It was late at night, and Menne was nervous. All of these factors combined give Roark reasonable suspicion, and the circuit court so found.

We affirm the circuit court's denial of Menne's motion to suppress the evidence seized as a result of Roark's search of her truck, because that ruling is not clearly against the preponderance of the evidence.

Affirmed. Court of appeals opinion vacated.

HANNAH, C.J., and BAKER, J., dissent.

GOODSON, J., not participating.

JIM HANNAH, Chief Justice, dissenting.

I respectfully dissent. The search was illegal because (1) a law enforcement officer may not extend a traffic stop beyond the time necessary to complete the stop by withholding the citation and personal documents and (2) because no reasonable suspicion was discovered during the traffic stop to justify the detention after the purpose of the traffic stop was completed.

I first address the question of whether, because Trooper Roark had not had Menne sign the warning citation or returned her personal documents, the traffic stop had not been completed at the time the request for consent to search was made. By ten minutes into the stop, Trooper Roark had completed his investigation of the speeding violation. All he had left to

do was return Menne's personal documents and obtain her signature on the citation. Trooper Roark withheld these items believing that, as long as he did not actually issue the citation and return the documents, the traffic stop was not completed. Citing *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007), and *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004), the majority agrees stating, "Our case law suggests that a stop is not complete until the warning citation and other documents are delivered back to the driver." I disagree that issuance of a citation and return of personal documents controls when the purpose of a stop is completed. "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). In *Sims*, this court stated that after the routine checks of a traffic stop are completed, unless the officer has a reasonably articulable suspicion for believing that criminal activity is afoot, continued detention of the driver can become unreasonable. *Sims*, 356 Ark. at 514, 157 S.W.3d at 535 (citing *United States v. Beck*, 140 F.3d 1129 (8th Cir.1998)). Withholding the citation and personal documents after the purpose of the traffic stop has been completed as a means to detain a person converts a legal stop into an illegal stop because the probable cause that justified the traffic stop no longer exists.

However, the majority concludes that there was reasonable suspicion that justified Menne's detention, but nothing occurred during the traffic stop to give rise to the reasonable suspicion that is required

to detain. To detain, there must be a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). Detention after the purpose of a traffic stop is completed exists where "something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Yarbrough v. State*, 370 Ark. at 39, 257 S.W.3d at 56–57; *see also Sims v. State*, 356 Ark. at 514, 157 S.W.3d at 535 (quoting *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir.1995) ("[o]nce the purposes of the initial traffic stop were completed, there is no doubt that the officer could not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention")). Nothing occurred during the traffic stop in the present case to provide the necessary reasonable suspicion that Menne was committing, had committed, or was about to commit a crime. *See* Ark. R.Crim. P. 3.1.

Reasonable suspicion requires facts and circumstances that rise above bare suspicion and conjecture. *See* Ark. R.Crim. P. 2.1. There must be an "articulable suspicion that the person has committed or is about to commit a crime." *Jefferson v. State*, 349 Ark. 236, 244, 76 S.W.3d 850, 855 (2002) (quoting *Thompson v. State*, 303 Ark. 407, 409, 797 S.W.2d 450, 451 (1990)). An articulable or reasonable suspicion requires facts or circumstances that give rise to more than a bare, imaginary, or purely conjectural suspicion. *Jefferson*, 349 Ark. at 245, 76 S.W.3d at 856. A hunch is not enough. *Belsky v. State*, 831 So.2d 803, 804 (Fla.Dist.Ct.App.2002). "A bare suspicion or a 'mere hunch' that criminal activity may be occurring is not sufficient." *Id.* (quoting *Ippolito v. State*, 789 So.2d 423, 425 (Fla.Dist.Ct.App.2001)). The factors the majority relies on to find reasonable suspicion only give rise to a hunch or bare suspicion that Menne might be involved with drugs. Trooper Roark admits that he observed nothing during the traffic stop that caused him to suspect Menne. The only factors arising during the traffic stop that might imply criminal activity are nervousness and the time of the stop. "[M]ere nervousness cannot constitute reasonable suspicion of criminal activity and grounds for detention." *See Sims*, 356 Ark. at 514–15, 157 S.W.3d at 535. The time of the stop is of slight persuasive value, if even that. Trooper Roark stopped Menne at 10:57 p.m., a time when many people are up and out and about. All the other factors cited by the majority existed independent of the stop and did not arise at the time of the stop. Nothing that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention. *See Yarbrough* and *Sims*.

Trooper Roark wanted to search Menne's vehicle because he had found marijuana seeds in it the month before during a traffic stop when Menne was neither the driver nor a passenger in the vehicle. Additionally, two fellow law enforcement officers, including one who lived near Menne, told Trooper Roark they thought she might be dealing drugs. Trooper Roark had a hunch that Menne might be involved in criminal activity, a bare suspicion. But, reasonable suspicion, not a hunch, is required before a person may be detained. The detention and subsequent search in the present case were illegal. Therefore, I dissent.

BAKER, J., joins.

KAREN R. BAKER, Justice, dissenting.

There are two issues in this appeal: (1) whether the traffic stop was completed before Trooper Roark requested Menne's consent to search the vehicle; and (2) whether Trooper Roark had reasonable

suspicion to detain Menne after the traffic stop was completed. Because the majority erroneously determines that there was reasonable suspicion and does not address the issue of when the traffic stop was completed, I respectfully dissent.

In *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001), this court stated that "as part of a valid traffic stop, a police officer may detain a traffic offender while he completes certain routine tasks." *Id.* at 157, 60 S.W.3d at 474. The significance of the traffic-stop time period was again addressed in *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004).

> [A]s part of a valid traffic stop, a police officer may detain a traffic offender while the officer completes certain routine tasks, such as computerized checks on the vehicle's registration, the driver's license and criminal history, and the writing up of a citation or warning. During this process, the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the vehicle, and he may act on whatever information is volunteered.

*Id.* at 514, 157 S.W.3d at 535 (internal citations omitted). However, "[o]nce the purpose of the traffic stop is completed, the officer may not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." *Yarbrough v. State*, 370 Ark. 31, 38–39, 257 S.W.3d 50, 56–57 (2007) (quoting *Sims, supra*).

In this case, the record shows that the purpose of the otherwise valid traffic stop had ended before the request to search was made. Trooper Roark testified to the following facts:

- Shortly after making the stop, he was interested in getting the drug dog to appear based upon stopping the vehicle a month previously when a differ-

ent driver was arrested for possession of .16 grams of marijuana.

- Upon requesting the drug dog within the first two or three minutes, he was told that it would take "a little while" for the canine officer to get there.
- Between six and seven minutes into the stop, he had determined that Menne's driver's license was valid and there was nothing else to investigate regarding the speeding violation.
- By ten minutes into the stop, he had ascertained that the vehicle was properly registered.
- At twelve minutes and fifty-one seconds into the stop, he asked Menne to step outside of the vehicle.
- When he requested Menne to step out of the vehicle, he had not witnessed any criminal conduct (other than the traffic violation).
- At thirteen minutes and fifty-two seconds into the stop, he requested permission to search the vehicle.
- By the time he requested permission to search the vehicle, he had completed his investigation into the traffic stop and completed the warning ticket; however, he had not handed back her driver's license or gotten Menne's signature on the warning ticket.

Clearly, at the time Trooper Roark asked for permission to search the vehicle, the legitimate purpose of the traffic stop had ended. The majority cites to *Sims* and *Yarbrough* for the basic proposition that a traffic stop is not completed if the officer has not returned documents to the driver or issued the citation. However, neither of those cases confronted the pivotal issue in this case: whether an officer may extend the stop by retaining the driver's license and warning ticket beyond the time he could have performed those functions. Trooper Roark offered no explanation as to why he had failed to return the

driver's license and issue the warning ticket even though he testified that he had completed the traffic stop more than three minutes before he requested permission to search. An officer may not extend a traffic stop simply by failing to carry out these basic functions. I would find that the legitimate purpose of the traffic stop ended when Trooper Roark had the opportunity to return the driver's license and to issue the warning ticket.

Once the legitimate purpose of the stop terminated, Rule 3.1 of the Arkansas Rules of Criminal Procedure and our precedent do not allow continued detention unless the officer possesses reasonable suspicion that the person is committing, has committed, or is about to commit a felony or a misdemeanor involving danger to persons or property. *See, e.g., Malone v. State,* 364 Ark. 256, 217 S.W.3d 810 (2005). The officer must develop reasonable suspicion to detain before the legitimate purpose of the traffic stop has ended. *Id.* Whether there is reasonable suspicion depends upon whether, under the totality of the circumstances, the police have "specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity." *Burks v. State,* 362 Ark. 558, 210 S.W.3d 62 (2005) (citing *Laime, supra* ).

While the majority correctly cites the above standard, it erroneously applies the standard to the facts of this case. Rule 2.1 of the Arkansas Rules of Criminal Procedure states that reasonable suspicion means a suspicion based on facts or circumstances that give rise to more than a bare suspicion, not an imaginary or purely conjectural suspicion. Here, Trooper Roark's testimony revealed that he did not have reasonable suspicion to detain Menne or to request permission to search.

This court's precedent involving the existence of reasonable suspicion justifying the detention of a motorist after the termination of a legitimate traffic stop demonstrates that here the circuit court erred. *Sims v. State,* 356 Ark. 507, 157 S.W.3d 530 (2004), held that the officer did not have specific, particularized, and articulable reasons indicating that Sims was engaged in any drug-related activity such that he could be detained for a canine sniff of his vehicle. The officer testified that (1) Sims appeared nervous, was not listening to him, and began to sweat during questioning; (2) Sims, who had Illinois car tags, stated that he had picked up a friend in Mississippi who was going to do some yard work for him; (3) Sims's passenger, on the other hand, stated that he was traveling with his brother; (4) Sims's passenger could only produce a birth certificate as identification; and (5) a criminal history check on both men revealed that both had prior drug arrests. The *Sims* court found that these factors did not give rise to more than a bare suspicion.

However, in *Burks v. State,* 362 Ark. 558, 210 S.W.3d 62 (2005), this court held that the officer had reasonable suspicion to detain and conduct a canine sniff after the traffic stop was concluded. The officer testified that (1) Burks appeared anxious and answered evasively; (2) a license check showed Burks had been arrested for a firearms offense; and (3) Burks was driving a rental car due to be returned the day before that was not to be driven outside of California and Arizona. The *Burks* court stated that these facts established specific, articulable reasons to suspect that criminal activity was afoot.

Likewise, in *Laime v. State,* 347 Ark. 142, 60 S.W.3d 464 (2001), reasonable suspicion was found based on (1) a background check that revealed a drug conviction which Laime lied about; (2) Laime's ever-increasing agitation; (3) Laime and Dodd, a passenger and codefendant, stated that they were meeting people in Little

Rock for dinner, but neither was able to name the dinner companions or the restaurant; and (4) Laime's assertion that the van was borrowed from a friend, but it had actually been registered to Dodd earlier that day. While rejecting mere nervousness, standing alone, as constituting grounds for detention, the *Laime* court distinguished the conduct before it as that ranging from inquisitiveness to anger to combativeness. Thus, the majority's reliance on *Laime* is misplaced.

The majority's reliance on *Malone v. State*, 364 Ark. 256, 217 S.W.3d 810 (2005), is also misguided. There, the officer stated at the suppression hearing that (1) Malone stated he was taking his niece to her aunt's house, but when asked where she lived, Malone stated that he did not know exactly, somewhere in Arkansas; (2) Malone was nervous, shaking uncontrollably, did not make eye contact, and spoke in a very quiet voice; (3) the registration check on the Texas license plate indicated that the vehicle was owned by a Texas resident who was not in the vehicle, and no one in the vehicle could produce proof of ownership or registration for the car; and (4) there was no indication that the owner had given any of the occupants permission to possess the vehicle. This court stated that such factors gave the officer articulable reasons to extend the detention of Malone beyond the initial traffic stop.

The majority lists five factors that gave Trooper Roark reasonable suspicion that Menne was engaged in criminal activity: (1) one month earlier he had stopped the same vehicle and arrested Menne's passenger, Christopher Smith, for DWI and possession of marijuana; (2) Menne's criminal-history check revealed a prior arrest; (3) information from a local police department was that Menne was suspected of drug dealing; (4) Menne was nervous; and (5) the time of night. However, Roark testified that the only information given to him by dispatch while he was at the scene was that Menne's driver's license was valid and that she had had an accident in 1995. He admitted that he listened to the tape recording of the stop, and it did not reflect that dispatch told him while he was at the scene that she had been arrested in another state. However, he stated that "at some point" he became aware that she had been arrested in another state for some unknown offense. This court has held that reasonable suspicion is determined by what the officer knows *prior* to detention pursuant to Rule 3.1. *Sims*, 356 Ark. 507, 513–14, 157 S.W.3d 530, 534–35. Also, Roark never elaborated on Menne's nervousness as different than what any driver would exhibit when stopped by the police. While the majority recognizes the problem with relying on this type of evidence, it nonetheless finds it is a factor sufficient to warrant reasonable suspicion.

In my view none of the factors in this case, in totality, gave rise to specific, particularized, and articulable reasons to believe that Menne might have been involved in criminal activity when the purpose of the traffic stop was completed. Therefore, Trooper Roark did not have reasonable suspicion to detain Menne further or ask for her consent to search the vehicle. I would reverse.

HANNAH, C.J., joins this dissent.