Cite as 2020 Ark. App. 267

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-19-649

| | |
|---|---|
| JOSHUA PARKS<br><br>                    APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>                    APPELLEE | **Opinion Delivered:** April 29, 2020<br><br>APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT<br>[NO. 23CR-15-467]<br><br>HONORABLE CHARLES E. CLAWSON, JR., JUDGE<br><br>AFFIRMED |

**RITA W. GRUBER, Chief Judge**

A Faulkner County Circuit Court jury found appellant Joshua Parks guilty of negligent homicide, reckless driving, and first-degree battery for which he was sentenced to concurrent sentences of twelve months in the county jail, three months in the county jail, and sixty-six months in the Arkansas Department of Correction plus fines and fees totaling $5,400. His sole point on appeal is that the trial court erred in denying his motion to suppress a blood alcohol concentration (BAC) test. We affirm his convictions.

This case arose from a two-car crash on Interstate 40 near Mayflower. Shortly before midnight on June 27, 2014, appellant rear-ended a minivan while traveling 100 miles per hour, causing both vehicles to leave the roadway and overturn. The driver of the minivan was traveling with his wife and three children, several of whom were ejected from the van, resulting in multiple, serious injuries and the death of a five-year-old child.

Matthew Toon, an Arkansas State Police Trooper, arrived on the scene at 12:11 a.m. on June 28. At the hearing on appellant's motion to suppress, Toon testified that he was obligated by law to draw blood from the drivers of both vehicles because the accident involved a fatality. He obtained a blood-draw kit from his patrol car and asked the paramedic to draw appellant's blood. Toon admitted that he did not obtain appellant's consent. Toon testified that he attempted to get appellant to respond to questions such as: What happened? Can you hear me? Can you open your eyes? and Are you hurting? But appellant was nonresponsive. Toon believed appellant was unconscious.

Mark Reeves, the paramedic, testified that appellant was "sleepy" and could not stay awake. He confirmed Toon's testimony that appellant did not respond to any of their questions. The standard blood-consent form used by Reeves indicates that appellant did not consent to the blood draw and that it was performed at Toon's request under appellant's "implied consent" because he was "unresponsive due to possible" ethanol or alcohol consumption. Reeves drew appellant's blood, which subsequent testing revealed contained a BAC of .066%.

Before trial, appellant moved to suppress the results of the BAC test on the ground that warrantless blood draws violate the Fourth and Fourteenth Amendments of the United States Constitution, citing the recently issued United States Supreme Court decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016) (holding that a breath test, but not a blood test, may be administered as a warrantless search incident to a lawful arrest for drunk driving). He also argued that the statutes authorizing the warrantless blood draw—Ark. Code Ann. §

5-65-202 and Ark. Code Ann. § 5-65-208—are unconstitutional.[1] The State contended that a warrantless search of appellant's blood was required by the statute in effect at the time of the accident, Ark. Code Ann. § 5-65-208, due to the resulting fatality.[2] Citing *Illinois v. Krull*, 480 U.S. 340 (1987), the State argued that Officer Toon's reliance on this statute was objectively reasonable because the incident occurred two years before *Birchfield* was decided. The trial court agreed and denied appellant's motion to suppress, basing its decision on *Illinois v. Krull* and Officer Toon's good faith and reasonable reliance on the law at the time of the accident.

Appellant's sole point on appeal is that the trial court erred in denying his motion to suppress the evidence. We review the denial of a motion to suppress de novo considering the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007). We defer to the superior position of the trial court to evaluate the credibility of witnesses at a suppression hearing, and any conflicts in the testimony of witnesses are for the trial court to resolve. *Rainey v.*

---

[1]Both statutes were amended in 2017 to require a warrant to test a person's blood based on probable cause that the person was operating a motor vehicle while intoxicated. *See also Dortch v. State*, 2018 Ark. 135, 544 S.W.3d 518 (holding that a previous version of Ark. Code Ann. § 5-65-202 was unconstitutional as applied to Dortch).

[2]Subsection (a) of the 2014 version of the statute provided that when a driver was involved in an accident "resulting in loss of human life or when there is reason to believe death may result, a chemical test of the driver's blood, breath, saliva, or urine shall be administered to the driver . . . to determine the presence of and percentage of alcohol concentration or the presence of a controlled substance, or both, in the driver's body."Ark. Code Ann. § 5-65-208(a) (Supp. 2013).

*State*, 2017 Ark. App. 427, at 7, 528 S.W.3d 288, 293. We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Menne v. State*, 2012 Ark. 37, 386 S.W.3d 451.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV. A BAC test is a search and thus normally requires a warrant. *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 2533 (2019). A warrantless search of a person is reasonable only if it falls within a recognized exception to the warrant requirement. *Dortch*, 2018 Ark. 135, 544 S.W.3d 518 (citing *Missouri v. McNeely*, 569 U.S. 141 (2013)).

One of these recognized exceptions is "search incident to arrest" in a drunk-driving arrest. In *Birchfield*, the United States Supreme Court held that a drunk-driving arrest, without more, justifies a warrantless breath test but not a warrantless blood test. *Birchfield*, 136 S. Ct. at 2184–85. The *Birchfield* Court also addressed another exception to the warrant requirement—consent. It is well established that a search is reasonable when the subject consents, and sometimes the consent need not be express but may be inferred from context. *Id*. at 2185. The searches in *Birchfield* were conducted pursuant to statutorily imposed implied-consent laws similar to the version of Arkansas Code Annotated section 5-65-202 that existed at the time of the incident here.[3]

---

[3] (a) Any person who operates a motor vehicle or is in actual physical control of a motor vehicle in this state is deemed to have given consent, subject to the provisions of § 5-65-203, to one (1) or more chemical tests of his or her blood, breath, saliva, or urine for the purpose of determining the alcohol or controlled substance content of his or her breath or blood if:

4

Implied-consent laws generally require that, in exchange for the privilege of driving on the State's roads, suspected drunk drivers must submit to a breath or blood test to determine alcohol concentration or controlled-substance content. If they refuse, they may face penalties. *See Simon Bord, Drunk Driving, Blood, and Breath: The Impact of Birchfield v. North Dakota*, 27 Cornell J.L. & Pub. Pol'y 841 (2018). After being arrested for drunk driving, Birchfield refused to submit to a warrantless blood test and was criminally prosecuted for his refusal. The Court noted that its prior opinions had referred approvingly to the general concept of implied-consent laws that impose "civil penalties and evidentiary consequences" on motorists who refuse to comply and stated that "nothing we say here should be read to cast doubt on them." *Id.* at 2185. The Court then held that drivers cannot, however, be deemed to have consented to submit to a blood test "on pain of committing a criminal offense." *Id.* at 2186.

Our own supreme court looked at Arkansas's implied-consent law in light of *Birchfield* in *Dortch*, 2018 Ark. 135, 544 S.W.3d 518, and appellant argues that his blood

---

(1) The person is arrested for any offense arising out of an act alleged to have been committed while the person was driving while intoxicated or driving while there was an alcohol concentration of eight hundredths (0.08) or more in the person's breath or blood;

(2) The person is involved in an accident while operating or in actual physical control of a motor vehicle; or

(3) At the time the person is arrested for driving while intoxicated, the law enforcement officer has reasonable cause to believe that the person, while operating or in actual physical control of a motor vehicle, is intoxicated or has an alcohol concentration of eight hundredths (0.08) or more in the person's breath or blood.

Ark. Code Ann. § 5-65-202 (Supp. 2013).

draws were taken pursuant to statutes found unconstitutional in *Dortch*. Like appellant, Dortch was driving a car that was involved in a fatal accident. The officer at the scene noticed Dortch had bloodshot, watery eyes and smelled of intoxicants. 2018 Ark. 135, at 3, 544 S.W.3d at 521. Dortch admitted that he had been drinking. *Id.* At the emergency room, the officer reviewed with Dortch the standard form outlining Arkansas's implied-consent law, noting that refusal to take a blood test subjected Dortch to penalties including the revocation of driving privileges. *Id.* Dortch signed the form, and a blood test was administered. *Id.* The trial court denied Dortch's subsequent motion to suppress, finding that Dortch impliedly and actually consented to the blood draw and that his actual consent was voluntary. *Id.* at 4, 544 S.W.3d at 521. Our supreme court determined that the refusal to submit to a blood test pursuant to Ark. Code Ann. § 5-65-202 resulted in the imposition of criminal penalties; thus, under *Birchfield*, it was unconstitutional as applied to Dortch. *Id.* at 18, 544 S.W.3d at 528.

The blood draw in this case was not taken pursuant to Ark. Code Ann. § 5-65-202 but pursuant to Ark. Code Ann. § 5-65-208 as it existed on June 27, 2014.[4] Although our

---

[4] (a) When the driver of a motor vehicle of this state is involved in an accident resulting in loss of human life or when there is reason to believe death may result, a chemical test of the driver's blood, breath, saliva, or urine shall be administered to the driver, even if fatally injured, to determine the presence of and percentage of alcohol concentration or the presence of a controlled substance, or both, in the driver's body.

(b)(1) The law enforcement agency that investigates an accident described in subsection (a) of this section, the physician in attendance, or any other person designated by state law shall order the chemical test as soon as practicable.

Ark. Code Ann. § 5-65-208 (Supp. 2013).

supreme court determined that Ark. Code Ann. § 5-65-202 was unconstitutional as it applied to the defendant in *Dortch*, it specifically declined to consider the constitutionality of Ark. Code Ann. § 5-65-208 because the trial court determined that Dortch was informed of the implied-consent law, including the penalties for refusal to consent, and thereafter consented to the blood draw. *Dortch*, 2018 Ark. 135, at 10–11, 544 S.W.3d at 524. The trial court made no such findings in this case. There was no testimony that anyone informed appellant of the penalties for refusing consent. It is undisputed that appellant was nonresponsive and did not consent to the blood draw.[5] Officer Toon testified that he was obligated under Arkansas law to take blood draws from any drivers involved in an accident resulting in a fatality. Although appellant argues that section 5-65-208 is unconstitutional, our supreme court has not decided the constitutionality of section 5-65-208 after *Birchfield*, the trial court below did not do so, and we decline to do so here.

Officer Toon relied on the law as it existed before *Birchfield* and *Dortch* were decided. He believed that the law required him to obtain a blood draw from both drivers in this accident because the accident involved a fatality. And in 2014, it did. Thus, he did not

---

[5]We are aware of the recent United States Supreme Court opinion in *Mitchell v. Wisconsin*, holding that a warrantless blood draw falls within the exigent-circumstance exception when a drunk-driving suspect is unconscious. 139 S. Ct. 2525. The Court in *Mitchell* set forth the following explanation for application of the exception in a drunk-driving case: "[E]xigency exists when (1) BAC evidence is dissipating and (2) some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application." *Mitchell*, 139 S. Ct. at 2537; *see also Schmerber v. California*, 384 U.S. 757 (1966) (applying the exigent-circumstance exception where the drunk-driving suspect was involved in an accident causing an urgent need for the officer to bring the suspect to the hospital and investigate the scene of the accident). The trial court did not have the benefit of *Mitchell* when it decided the motion to suppress, nor did it make any findings regarding exigent circumstances. We do not decide here whether the facts in this case fit within the exigent-circumstance exception.

advise appellant of his ability to decline consent or explain the consequences of doing so. Moreover, appellant was nonresponsive and, according to Toon, unconscious. The trial court found that regardless of whether it was unconstitutional, Toon's action was taken in good faith, and he reasonably relied on the law as it existed at the time of the accident.

Generally, when evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule precludes its use in a criminal proceeding. *Weeks v. United States*, 232 U.S. 383 (1914). The prime purpose is to deter future unlawful police conduct. *Krull*, 480 U.S. at 346 (1987) (citing *United States v. Calandra*, 414 U.S. 338 (1974)); *see also Deshazo v. State*, 95 Ark. App. 398, 237 S.W.3d 493 (2006). The Supreme Court has adopted good-faith exceptions to the exclusionary rule where application of the rule does not advance this remedial purpose. *Krull*, 480 U.S. at 347. In *United States v. Leon*, 468 U.S. 897 (1984), the Court held that the exclusionary rule does not apply when the police conduct a search in "objectively reasonable reliance" on a warrant later held invalid. 468 U.S. at 922. The Court applied a similar rationale in *Davis v. United States*, 564 U.S. 229 (2011), holding the exclusionary rule inapplicable when the police conduct a search in objectively reasonable reliance on binding appellate precedent. Of particular relevance here, the Court extended the good-faith exception to searches conducted in objectively reasonable reliance on statutes subsequently declared to be unconstitutional in *Illinois v. Krull*, 480 U.S. 340. *See also Feland v. State*, 355 Ark. 573, 577, 142 S.W.3d 631, 633–34 (2004). Under the circumstances presented here, we conclude, as did the trial court, that the good-faith exception applies, and the exclusionary rule does not require the suppression of appellant's BAC test.

Affirmed.

S<span>WITZER</span> and H<span>IXSON</span>, JJ., agree.

*Eric Moore*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jacob H. Jones*, Ass't Att'y Gen., for appellee.