Cite as 2020 Ark. App. 303

# ARKANSAS COURT OF APPEALS

DIVISION II

**No.** CR-19-685

| | |
|---|---|
| CHRIS C. BRISSETTE | **Opinion Delivered:** May 13, 2020 |
| APPELLANT | APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT [NO. 23CR-15-838] |
| V. | |
| STATE OF ARKANSAS | HONORABLE CHARLES E. CLAWSON, JR., JUDGE |
| APPELLEE | AFFIRMED |

## MEREDITH B. SWITZER, Judge

Chris Brissette entered conditional guilty pleas to three counts of first-degree battery and one count of misdemeanor possession of a controlled substance. In this appeal, he contends that the circuit court erred in refusing to suppress his blood-test results because Arkansas's mandatory blood-draw statute,[1] which was in effect when Brissette was subjected to a warrantless blood draw, was unconstitutional. We affirm.

On August 14, 2015, Brissette was involved in a four-vehicle collision in which several persons were injured. Troopers Benjamin Hoyt and Gabriel Monroe were two of the state troopers involved in investigating the accident. On November 2, 2015, the State filed an information against Brissette alleging several offenses, including three counts of battery, one count of reckless driving, and one count of possession of a controlled substance. On April 7, 2016, Brissette filed a motion to suppress the result of a blood test that was

---

[1]Ark. Code Ann. § 5-65-208 (Repl. 2016).

taken without a warrant at the direction of Trooper Monroe. He alleged that he did not give knowing, intelligent consent and that he was deprived of the opportunity to have the blood sample independently tested. The State responded, contending that Brissette did give knowing, intelligent consent and that the blood sample was still available for testing.

Following a hearing held on December 13, 2016, the circuit court granted the motion to suppress. In its May 17, 2017 order, the court ruled that because Brissette was receiving medical treatment and under the influence of powerful pain medication at the time his verbal consent was procured, he was incapable of knowingly and intelligently waiving his rights or consenting to having his blood drawn for testing.

A jury trial was scheduled for January 30–31, 2018. On January 12, the State filed a motion to reconsider, in which it maintained its previous positions but also argued that Brissette's blood draw, which was taken on August 14, 2015, occurred prior to the United States Supreme Court's June 23, 2016 decision in *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016), and that Troopers Monroe and Hoyt relied in good faith on Arkansas Code Annotated section 5-65-208(a), as it stood on August 14, in obtaining the blood draw. Brissette responded, and a hearing on the motion was held January 17.

On January 19, the circuit court entered an order reversing its earlier ruling and denying Brissette's motion to suppress on the basis of the good-faith exception to the exclusionary rule. The court reasoned that Brissette's blood was drawn pursuant to section 5-65-208; it was reasonable for experienced law-enforcement officers to conclude that the injuries sustained in the accident were life-threatening; and it was therefore appropriate for the trooper to order the blood draw in good-faith reliance on section 5-65-208 as it existed

on that date. On that same date, Brissette filed another motion to suppress arguing that the State had not previously relied on section 5-65-208; that in denying the motion to suppress, the circuit court did not rule on the constitutionality of section 5-65-208 but implicitly ruled that the *Birchfield* decision should not be applied retroactively; and that section 5-65-208 was unconstitutional when his blood was taken in August 2015 because it violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution. On July 5, 2018, the State filed an additional response to the motion to suppress. The State addressed the Arkansas Supreme Court's decision in *Dortch v. State*, 2018 Ark. 135, 544 S.W.3d 518, and argued that it did not affect the circuit court's January 18, 2018 order denying Brissette's motion to suppress on the basis of the good-faith exception to the exclusionary rule.

On July 9, 2018, Brissette amended his motion to suppress, reviving his position that the trooper failed to advise him of his rights pursuant to section 5-65-204; therefore, the test results were inadmissible and should be suppressed. On August 6, the circuit court explained that it had revisited the issue as requested but stood on its previous ruling denying the motion to suppress. Brissette entered his conditional pleas of guilty, and this appeal followed.

Troopers Hoyt and Monroe testified at both the December 13, 2016 and January 17, 2018 suppression hearings. Their testimony did not differ significantly in these hearings except that Monroe's testimony in December focused more on obtaining Brissette's verbal consent for the blood draw. In addition, the State presented two emergency-medical witnesses, Amanda Severs and Jarrod Richey, at the January hearing.

Amanda Severs testified that she is an EMT and was called to the August 2015 collision on Highway 65. She stated that she assessed twelve-year-old Matthew Moffit's condition and concluded he was very seriously injured. She thought he had internal bleeding or massive internal injuries. His blood pressure and pulse both continued to drop over the course of the time she was with him. She was concerned he might not make it to the hospital alive.

Jarrod Richey, a paramedic with MEMS ambulance service, testified that he responded to the August 14, 2015 wreck. He made contact with Matthew Moffit. He concluded that Moffit was "within his golden hour" and that he was starting into decompensating shock. Moffit remained conscious but was becoming more confused. The only appropriate facility for him was Children's Hospital. Richey had Moffit airlifted there because he was afraid Moffit might not survive his injuries. Richey said he also assessed Becky Vines. She was being removed from her vehicle with extrication tools when he arrived, so he went to Moffit and then returned to Vines after she had been removed from her vehicle. He said he ordered a second helicopter due to the fact that Vines was being extricated from the vehicle. He said anytime extrication takes more than twenty minutes, it is a life-threatening situation and is considered a major trauma. He explained that his two major concerns were blood loss from the extrication and the buildup of toxins in the blood caused by entrapment, which can cause organ shutdown when the pressure of the vehicle part(s) are finally removed. He noticed that Vines's lower limbs were broken with several fractures of her lower extremities and that she also had some upper-extremity fractures.

4

Trooper Hoyt testified that he was able to tell immediately upon arrival that there were life-threatening injuries because there was a head-on collision and there were massive amounts of damages to the vehicles. Two people were still trapped in their vehicles when he arrived. He stated that in his experience, helicopters are used when there are life-threatening injuries involved. He testified that one of the things law enforcement does in a collision such as this is obtain blood from potentially at-fault drivers. He said his understanding of section 5-65-208 was that in accidents involving potential life-threatening injuries, he is to obtain a blood draw from any drivers or operators of the motor vehicles that are involved in the collision. Because he could not leave the scene to ensure that the blood draw was performed, he called his supervisor to get a trooper in Pulaski County to request the blood draw at Baptist Health Medical Center. He stated that when law enforcement fears there is going to be a loss of life, it is a priority to get the blood sample.

Trooper Monroe explained that he responded to Baptist Health Medical Center to obtain blood from the drivers involved in the head-on collision due to the life-threatening nature of the injuries at that scene. He made contact with the two drivers involved—Vines and Brissette. He acknowledged testifying at the earlier hearing and focusing on the consent Brissette had given him for the blood draw. He said that he was familiar with section 5-65-208 and its requirements, and he was not going to leave the hospital without obtaining a blood draw from Vines and Brissette. He knew there were life-threatening injuries, so getting a blood sample was his primary objective. He stated he had been trained under section 5-65-208, and he was required to get the blood sample before he left the hospital.

5

He said he could not tell the judge verbatim what section 5-65-208 said, but to him it meant that if there were life-threatening injuries, he was required to obtain a blood draw.

Our appellate courts review de novo the denial of a motion to suppress, taking into consideration the totality of the circumstances, reviewing findings of historical fact for clear error, and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court and proper deference to the circuit court's findings. *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007). A finding is clearly erroneous— even if there is evidence to support it— when, after reviewing the entire evidence, we are left with a definite and firm conviction that the circuit court made a mistake. *Pickering v. State*, 2012 Ark. 280, 412 S.W.3d 143. A warrantless search of a person is reasonable only if it falls within a recognized exception to the warrant requirement. *Parks v. State*, 2020 Ark. App. 267, at 2. When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule precludes its use in a criminal proceeding. *Id*. The primary purpose of the exclusionary rule is to deter future unlawful police conduct. *Id*. The United States Supreme Court has adopted good-faith exceptions to the exclusionary rule where its application does not advance the remedial purpose of deterring future unlawful police conduct. *Id*. One such exception applies to searches conducted in objectively reasonable reliance on statutes subsequently declared to be unconstitutional. *Id*. (citing *Illinois v. Krull*, 480 U.S. 340 (1987)). We defer to the superior position of the circuit court to evaluate the credibility of witnesses at a suppression hearing, and any conflicts in the testimony of witnesses are for the circuit court to resolve. *Rainey v. State*, 2017 Ark. App. 427, 528 S.W.3d 288. We reverse only if the

circuit court's ruling is clearly against the preponderance of the evidence. *Menne v. State*, 2012 Ark. 37, 386 S.W.3d 451.

The United States Supreme Court has previously explained that applying the exclusionary rule to suppress evidence obtained by an officer acting in objectively reasonable reliance on a statute subsequently declared to be unconstitutional would have as little deterrent effect on the officer's actions as would the exclusion of evidence when an officer acts in objectively reasonable reliance on a warrant. *Krull*, 480 U.S. 340. Unless a statute is clearly unconstitutional, officers cannot be expected to question the judgment of the legislature that passed the law. *Id*. If the statute is subsequently declared unconstitutional, excluding evidence obtained pursuant to it prior to such a judicial declaration will not deter future violations of the Fourth Amendment by an officer who has simply fulfilled his responsibility to enforce the statute as written. *Id*.

Here, it is undisputed that Trooper Monroe did not obtain a warrant before directing that Brissette's blood be drawn. However, it is also undisputed that although section 5-65-208 was subsequently amended, on August 14, 2015, it provided:

> (a) When the driver of a motor vehicle or operator of a motorboat on the waters of this state is involved in an accident resulting in loss of human life or when there is reason to believe death may result, a chemical test of the driver's or operator's blood, breath, saliva, or urine shall be administered to the driver or operator, even if he or she is fatally injured, to determine the presence of and percentage of alcohol concentration or the presence of a controlled substance, or both, in the driver's or operator's body.

> (b)(1) A chemical test under this section shall be ordered as soon as practicable by one (1) of the following persons or agencies:

> (A) The law enforcement agency investigating the accident;
> (B) The physician in attendance; or

7

(C) Other person designated by state law.

Troopers Hoyt and Monroe testified about their understanding of the requirements of section 5-65-208 as it existed on August 14, 2015, and their assessment that the August 14 collision involved life-threatening injuries. Two EMTs who were at the scene of the accident also testified that they determined the injuries resulting from the accident were life-threatening. Trooper Monroe specifically testified that he obtained the blood draw from Brissette pursuant to section 5-65-208. Deferring to the circuit court's superior position to evaluate witness credibility, *Rainey*, *supra*, we are not left with a definite and firm conviction that the circuit court made a mistake in refusing to suppress Brissette's blood-test results as a result of its conclusion that the troopers acted in good faith pursuant to section 5-65-208.

In arguing that the circuit court erred in denying his motion to suppress, Brissette contends that his consent for the blood draw was not voluntary; that section 5-65-208 was unconstitutional at the time of the blood draw, as subsequently demonstrated in *Birchfield*, *supra*; and that *Birchfield* should be applied retroactively to reverse the circuit court's denial of his motion to suppress and to vacate his conviction. We find the arguments to be somewhat misguided considering the basis on which the circuit court denied the motion to suppress. The circuit court initially found that Brissette's consent was invalid, and that finding was never specifically changed. Instead, the circuit court changed its decision on the motion to suppress for another reason—the troopers acted in good-faith reliance on the statute in obtaining the blood draw. It is therefore unnecessary to reexamine the consent issue in this appeal. Moreover, as Brissette acknowledges, the circuit court did not

8

specifically decide the statute's constitutionality. Instead, the circuit court considered the good-faith exception to the exclusionary rule and concluded that the troopers acted in good faith in obtaining the blood draw pursuant to section 5-65-208 and denied the motion to suppress on that basis. Brissette's reliance on *Dortch*, *supra*, is also misplaced. The circuit court in that case did not rule on the good-faith exception to the exclusionary rule, so our supreme court did not reach that issue in *Dortch*. Here, however, the circuit court's denial of the motion to suppress was based squarely on the good-faith exception. Finally, even if our supreme court had declared section 5-65-208 unconstitutional in *Dortch* or any other decision after August 14, 2015, or if we applied *Birchfield* retroactively in this case to specifically declare the statute unconstitutional, the troopers' reliance on the statute as of August 14, 2015, would still be objectively reasonable, and the circuit court's good-faith analysis would still prevail.

We therefore hold that the circuit court did not clearly err in denying Brissette's motion to suppress based on the good-faith exception, making the exclusionary rule inapplicable and the blood-test results admissible.

Affirmed.

GRUBER, C.J., and HIXSON, J., agree.

*Laura Avery*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Karen Virginia Wallace*, Ass't Att'y Gen., for appellee.