Charles Grant DAVIS II  *v.*  STATE of Arkansas

CA CR 06-1367                                    258 S.W.3d 401

Court of Appeals of Arkansas
Opinion delivered June 6, 2007

[Rehearing denied August 1, 2007.]

*Lisa D. Davis*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

JOHN B. ROBBINS, Judge. Appellant Charles Grant Davis II entered a conditional guilty plea to possession of marijuana with intent to deliver, reserving in writing his right to appeal from the trial court's denial of his motion to suppress in accordance with Ark. R. Crim. P. 24.3(b). He was sentenced to eighteen months in prison, followed by a three-year suspended imposition of sentence. On appeal, Mr. Davis argues that the marijuana seized by the police should have been suppressed because the search of his vehicle was unreasonable, and thus violated the Fourth Amendment of the United States Constitution as well as article 2, § 15 of the Arkansas Constitution. We affirm.

Officer Jeff Bradish of the Clay County Sheriff's Department testified for the State. At about 6:00 p.m. on April 8, 2003, Officer Bradish received information that a car was traveling toward Clay County on Highway 67 at a speed of around 100 miles per hour. Officer Bradish subsequently located a vehicle matching the de-

scription given and he followed the car, pacing it at 60 miles per hour. The speed limit was 55 miles per hour, and Officer Bradish conducted a traffic stop for exceeding the speed limit. Officer Bradish was accompanied by another officer in his patrol car, and he also called for backup, which arrived soon thereafter.

Upon approaching the stopped car, Officer Bradish noticed a temporary license tag in the rear window that was issued from McAllen, Texas. He made contact with Mr. Davis, who was driving the car and stated that he was coming from San Antonio, Texas, and driving to his grandmother's funeral. According to Officer Bradish, Mr. Davis stated that he had wrecked his truck and had to rent a car, and that he was heading to Michigan where he would pick up his sister and then drive to the funeral in West Virginia on the following day. Mr. Davis advised that he had dropped off a friend earlier at a bus station in Dallas, Texas, but declined to give the friend's name. Mr. Davis presented a valid Michigan driver's license and a rental agreement. Mr. Davis asked Officer Bradish "if [he] could get on with it because he was in a hurry," and Officer Bradish said he could and asked Mr. Davis to come back to the patrol car.

After exiting the vehicle at the officer's request, Mr. Davis locked the car doors. Officer Bradish thought this was unusual, and Mr. Davis explained that when he gets out of his car he locks the doors out of habit. Officer Bradish asked for consent to search the car, and Mr. Davis refused. Officer Bradish stated that it would not take long for the other officer to conduct a search, but Mr. Davis again refused. Officer Bradish testified:

> I then stated I had a dog with me. I advised him I was a Canine Officer and I had my partner in the rear of the car and pointed back and showed him. He said that was fine, he had already been through two check points and had a dog run twice. I asked where and he said at the border patrol check point a dog went around his car. He explicitly said the dog went around his car three times at the bus station in Dallas. I said okay and we had a seat in my car. Mr. Davis said "go ahead and use your dog, I've been through two check points with dogs already."

While the two men sat in the patrol car, Officer Bradish ran background checks for warrants or violations, which came back clear. Officer Bradish then placed appellant's driver's license above the visor on the driver's side of the patrol car, and advised Mr.

Davis to step out of the car for a weapons search. During a pat down of Mr. Davis, Officer Bradish did not find any contraband but did find a large amount of cash. Officer Bradish then walked his canine along the side of appellant's car, and the dog alerted by aggressively scratching on the back passenger door. Officer Bradish retrieved appellant's keys and unlocked the car, and a subsequent search uncovered eight bricks of marijuana concealed in a backpack on the right rear floorboard.

Officer Bradish testified that he did not cite Mr. Davis for speeding, but that at the time he ran his dog along Mr. Davis's car he had not yet decided whether or not to write him a speeding ticket. Officer Bradish further testified that about eight minutes elapsed from the time he initiated the traffic stop until the dog alerted.

On appeal, Mr. Davis does not challenge the legality of the traffic stop. However, he argues that the search was illegal because it was based on the canine sniff, which occurred after the purpose of the traffic stop had been completed.

As part of a valid traffic stop, a police officer may detain a traffic offender while the officer completes certain routine tasks, such as computerized checks on the vehicle's registration and the driver's license and criminal history, and the writing up of a citation or a warning. *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004). During this process, the officer may ask the motorist routine questions such as his destination, the purpose of the trip, or whether the officer may search the vehicle, and he may act on whatever information is volunteered. *Id.* However, after those routine checks are completed, unless the officer has a reasonable articulable suspicion for believing that criminal activity is afoot, continued detention of the driver may become unreasonable. *Id.*; *United States v. Mesa*, 62 F.3d 159 (6th Cir. 1995). In the absence of a reasonable, articulable suspicion of some drug-related criminal activity, once the purpose of the traffic stop is completed, the operator of the vehicle should be allowed to proceed on his way, without being subject to further delay by police for additional questioning. *See Sims v. State, supra*; *United States v. Wood*, 106 F.3d 942 (10th Cir. 1997).

In the present case, Mr. Davis maintains that the purposes of the initial traffic stop were completed after the background checks came back clear. However, instead of returning Mr. Davis's driver's license and issuing a citation or warning, Officer Bradish

placed the driver's license above his sun visor and continued the detention by running his canine. Because the purposes of the stop were completed, and there was no reasonable suspicion of any criminal activity at that point, Mr. Davis argues that the subsequent search of his vehicle violated his constitutional rights and that the marijuana should have been suppressed.

In reviewing the denial of a motion to suppress evidence, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court. *Simmons v. State*, 83 Ark. App. 87, 118 S.W.3d 136 (2003). Based on our review of the totality of the circumstances in this case, we hold that the trial court committed no error in denying Mr. Davis's motion to suppress on the basis that the traffic stop was not completed at the time that the canine sniff was conducted.

■ The testimony of Officer Bradish revealed that although he made no specific request to do so, Mr. Davis encouraged Officer Bradish to "go ahead and use your dog" well within the time limits of the traffic stop. Consequently, Mr. Davis consented to an extension of the traffic stop for the canine sniff before the purposes of the stop had been completed. Therefore, the canine alert and subsequent search were lawful.

Affirmed.

PITTMAN, C.J., and HEFFLEY, J., agree.