2012 Ark. App. 144

**Carle A. FREEMAN, Appellant**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 11–909.**

Court of Appeals of Arkansas.

Feb. 15, 2012.

Hugh Richardson Laws, Russellville, for appellant.

Dustin McDaniel, Atty. Gen., by: William Andrew Gruber, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

Appellant Carle A. Freeman entered a conditional plea of no contest to possession of marijuana with intent to deliver. His plea followed the denial of his motion to suppress the fruits of a search of his vehicle. He appeals contending that the trial court clearly erred in finding that he gave valid consent to search and in finding that he was not illegally detained. We affirm.

In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based upon the totality of the circumstances, reversing only if the circuit court's ruling is clearly against the preponderance of the evidence. *Stokes v. State*, 375 Ark. 394, 291 S.W.3d 155 (2009). Any conflicts in the testimony are for the circuit court to resolve because it is in a superior position to determine the credibility of the witnesses. *Id.*

Testimony revealed the events leading to the search of Freeman's truck and trailer. An Arkansas State Police Corporal, Chris Goodman, was patrolling along Interstate 40 near Russellville, Arkansas at approximately 1:40 a.m. on April 13, 2010. Goodman observed a red and white tractor-trailer swerve onto the right shoulder of the freeway as it traveled eastward. Goodman initiated a traffic stop, made contact with Freeman, the sole occupant and driver, and told Freeman why he was stopped.

A video of the stop was recorded by Goodman's dash-board camera in his patrol unit; an audio recording was not available because the battery died in Goodman's microphone. According to the video, entered into evidence without objection, Goodman approached the vehicle and first interacted with the driver for about five minutes.

Goodman testified that the company name on the side of the truck was "World Class Logistics." Goodman asked for Freeman's driver's license, log books, and bills of lading, which Freeman provided. Goodman described the driver as "nervous," "shaking," and "excited with his demeanor and nervousness," although Goodman thought thirty-seven-year-old Freeman was "a man of intelligence."

Goodman believed that Freeman's route was "really abnormal" considering that Freeman said he was coming from California and headed to Miami, Florida, because Freeman's route went through Wyoming and other northern roadways to get to Arkansas. Goodman testified that Sacramento is a common origin of higher-grade marijuana. He learned that Freeman owned the trucking company. Goodman also noted that Freeman could not account for 2.5 hours off duty by promptly presenting a scale ticket, nor could he explain why he took off 20 hours in Oklahoma. Goodman also found it "strange" that Freeman had six seals of product receipt on his paperwork but only five bills of lading. He said that he basically gave Freeman a chance to make his log book make more sense, but Freeman could not do it.

Goodman testified that he ushered Freeman to the back of the trailer so that his camera and microphone would capture their interaction; he was unaware his microphone was not working. Their interac-

tion on the video commences approximately six minutes into the stop, and it appears amiable from their physical actions. Goodman said that as they stood at the back of the trailer, he asked whether a drug dog would alert if it ran around the truck, to which Freeman said, "No." Goodman said he followed this by asking Freeman if he could search the truck and trailer, to which Freeman responded, "Go ahead." He said there were no limitations put on Freeman's consent and that he believed it to be freely and voluntarily given.

Afterward, Goodman entered his patrol unit to run Freeman's driver's license and to request back-up. Goodman returned to Freeman about three minutes later to present Freeman with a warning ticket. Thereafter, Freeman is seen using keys to open the trailer. Both men entered the trailer so that Goodman could inspect the interior; no contraband was found inside. After about three minutes, both men exited the trailer and walked to the front of the truck.

Goodman said he then entered the cab and observed clothing, a box of black rubber bands, and loose shelves behind the front seats. Behind the shelves was a hidden, steel metal door with fresh paint and new screws. Goodman opined that, based upon his fourteen years of training, this was evidence of a hidden compartment. Goodman used a screw driver to open the door and found twenty-six packages of high-grade marijuana. The total weight was over thirty-two pounds. Goodman insisted that he received consent prior to completing the routine traffic-offense investigation.

Freeman testified at the suppression hearing, stating that he had held a commercial driver's license for ten years, that the 2001 model truck was rented by his company in October 2009, and that his company leased it to him personally in

December 2009. Freeman recalled being pulled over by Goodman and being told it was for swerving, which he denied doing. Freeman tendered his log book when asked, and he said he satisfactorily answered all of Goodman's questions about his trip. He did not think his route to be abnormal because his chosen route was faster for what he was trying to accomplish. Freeman denied ever giving Goodman consent to search. He said he was only asked whether a drug dog would find anything, and he answered, "No." He said that after he was handed a warning ticket, Goodman informed him that he needed to look in the trailer, and he was unaware he did not have to consent to it. Freeman said he thought he had to go along with whatever Goodman wanted to do.

On this evidence, the trial court entered an order denying Freeman's motion to suppress. The order found that Goodman had probable cause to stop the truck for swerving on the shoulder of the road; that Freeman freely and voluntarily gave consent to search the cab and trailer with no evidence of coercion; and that Freeman voluntarily produced his log books, bills of lading, and driver's license as part of routine tasks related to the traffic stop. This appeal followed.

Freeman argues that (1) the State failed to carry its burden to demonstrate that the officer obtained valid consent, and (2) the officer improperly detained Freeman, either of which would require that we reverse the denial of his motion to suppress the drugs found in his truck. Freeman also offers arguments pertaining to other rules of criminal procedure that would not permit search of his vehicle, but those arguments are not preserved because they are raised for the first time on appeal and were not ruled on by the trial court. *Hinojosa v. State*, 2009 Ark. 301, 319 S.W.3d

258; *Lawson v. State,* 89 Ark.App. 77, 200 S.W.3d 459 (2004).

■ A police officer may stop and detain a motorist where the officer has probable cause to believe that a traffic violation has occurred. *Hinojosa v. State, supra; Sims v. State,* 356 Ark. 507, 157 S.W.3d 530 (2004); *Flores v. State,* 87 Ark.App. 327, 194 S.W.3d 207 (2004). On appeal, appellant does not contest that the officer had a valid basis upon which to initiate a stop.

■ Generally, a search warrant and probable cause are required as prerequisites to a search. *Turner v. State,* 94 Ark.App. 259, 229 S.W.3d 588 (2006). An exception exists where the search is conducted pursuant to consent, which must be established by clear and convincing evidence that it was obtained freely, voluntarily, and without implied or actual duress or coercion. Ark. R.Crim. P. 11.1 (2010). While an officer is required to advise an individual of his right to refuse consent in the case of a home, this requirement does not apply to consent to search a vehicle. *Welch v. State,* 364 Ark. 324, 219 S.W.3d 156 (2005). A consensual search shall not exceed, in duration or scope, the limits of the consent given. Ark. R.Crim. P. 11.3 (2010). Where there are no limits placed on the search, the consent to search includes any containers found in the vehicle. *Miller v. State,* 342 Ark. 213, 27 S.W.3d 427 (2000). The test for a valid consent to search is that the consent be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *Webb v. State,* 2011 Ark. 430, 385 S.W.3d 152. Knowledge of the right to refuse consent is not a requirement to prove the voluntariness of the consent. *Id. See also Scott v. State,* 347 Ark. 767, 67 S.W.3d 567 (2002). We will not reverse a trial court's finding of fact on the validity of consent unless the finding is clearly wrong. *Gon-*

*der v. State,* 95 Ark.App. 144, 234 S.W.3d 887 (2006).

■ Freeman argues that the trial court clearly erred in finding that he gave valid consent to search his truck and trailer. We disagree. It is a long-standing rule that it is the province of the trial court, not this court, to determine the credibility of witnesses. *Webb v. State, supra.* Here, the trial court gave credence to the video showing the character of the interaction between Goodman and Freeman and to Goodman's testimony that he obtained free and voluntary consent to search without limitation. Based on the applicable substantive law and the standard of review, we hold that the trial court did not clearly err in finding that free and voluntary consent was given.

■ Freeman next asserts that the trial court clearly erred because he was illegally detained after the legitimate purpose of the traffic stop had ended. Because Freeman failed to obtain a ruling from the trial court on his continued-detention argument, it is not preserved for our review on appeal. *Hinojosa v. State, supra.*

Even had we considered the merits, we would affirm. The State notes that as part of the valid traffic stop, Goodman could detain Freeman while completing certain routine tasks such as checking the driver's license, criminal history, and writing of a citation or warning. *Sims v. State, supra.* During that process, the officer may ask questions about the driver's destination, purpose of the trip, and whether the officer may search the vehicle. *Id.* The officer may act on whatever information is volunteered. *Id.* We agree with the State. *Compare Menne v. State,* 2012 Ark. 37, 386 S.W.3d 451.

Goodman's testimony established that he asked for and received consent to search when he first brought Freeman to the

back of the trailer. This was approximately six minutes into the traffic stop, according to the video. Goodman testified that this was prior to running Freeman's driver's license, running a criminal-history check, and issuing him a warning ticket. The video indicates that the written warning was handed to Freeman approximately nine minutes into the traffic stop. The search commences when Freeman unlocks the back of his trailer for Goodman, about three minutes after the warning ticket is given. After our de novo review on the totality of the circumstances, we hold that the trial court did not clearly err in denying Freeman's motion because consent was obtained prior to the completion of the traffic stop. *See also Yarbrough v. State,* 370 Ark. 31, 257 S.W.3d 50 (2007); *Davis v. State,* 99 Ark.App. 173, 258 S.W.3d 401 (2007).

For the foregoing reasons, we affirm.

WYNNE and ABRAMSON, JJ., agree.