

# ARKANSAS COURT OF APPEALS

DIVISIONS I, II & III
**No.** CR–16–522

| | |
|---|---|
| | **Opinion Delivered** March 8, 2017 |
| ALEXANDER POKATILOV<br>APPELLANT | APPEAL FROM THE LONOKE COUNTY CIRCUIT COURT<br>[NO. 43CR-14-167] |
| V. | |
| | HONORABLE SANDY HUCKABEE, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

## LARRY D. VAUGHT, Judge

A Lonoke County jury found Alexander Pokatilov guilty of possession of a Schedule VI controlled substance (marijuana) with the purpose to deliver. On appeal, Pokatilov argues that (1) there was insufficient evidence to support his conviction; (2) the circuit court abused its discretion by rejecting his proffered instruction on constructive possession; (3) the circuit court abused its discretion by refusing to reinstruct the jury with his proffered instruction on constructive possession; and (4) the circuit court erred in denying his motion to suppress evidence seized as a result of an illegal search. We affirm.

Pokatilov was an owner-operator of an automobile-transport carrier that moved vehicles from coast to coast. On March 6, 2014, he was carrying six vehicles when he was pulled over by Officer Jeremy Watkins of the Arkansas Highway Police on Interstate 40 in Lonoke County. At trial, Watkins testified that he observed a large commercial carrier loaded with vehicles drive several times over the white line onto the shoulder where there was ice left

over from a snowstorm. Watkins stopped the vehicle.[1] Watkins advised Pokatilov that he was not keeping his vehicle in his lane, and Pokatilov became argumentative and said he was driving fine.

Watkins testified that he was certified by the Department of Transportation to conduct inspections on commercial vehicles and that it is standard procedure to obtain and review the truck and trailer registration, commercial driver's license, logbooks, and bills of lading on each automobile being transported. He instructed Pokatilov to produce his paperwork. According to Watkins, several things in the paperwork aroused his suspicion. He found excessive downtime in the logbooks, which was uncommon because carriers do not get paid for downtime. He stated that the logbooks showed Pokatilov to be off duty from February 9 to February 18 and from February 21 to March 3. Watkins also testified that the bills of lading were not filled out properly; they seemed "very, very generic." Some showed a customer's first name and no last name. Others did not have a customer name on them at all.

Pokatilov told Watkins that he had loaded the cars onto the trailer and that he knew there were items in some of the vehicles. Watkins also thought Pokatilov, who was sitting in the patrol car by this time, seemed nervous. When Watkins asked Pokatilov if he allowed people to put personal belongings in the cars he hauled, Pokatilov brought up the topic of marijuana, stating that if a vehicle he was carrying smelled like marijuana, he would report it to law enforcement. Watkins asked, "You don't think there's anything illegal in any of them?" Pokatilov responded, "Not really." Watkins testified that these indicators of criminal activities

---

[1]The encounter with Pokatilov was videotaped and played at trial.

SLIP OPINION

caused him to ask Pokatilov if he minded if Watkins searched the vehicles on the carrier, and Pokatilov answered, "Nope, not at all."

One vehicle stood out to Watkins—a 1995 Chevy Tahoe. Watkins was suspicious of this vehicle because it was the only one Pokatilov had picked up at a shopping center; the rest had been picked up at homes. Watkins also found it odd that someone would pay more than the 1995 Tahoe's value to have it hauled across the country. Watkins searched the Tahoe first and within minutes found two Rubbermaid containers and a Home Depot box in the cargo area. Watkins opened the containers and found multiple bags of what appeared to be marijuana.

Gene Bangs, a forensic chemist with the Arkansas State Crime Lab, testified that he tested twelve bags submitted by Watkins, that they were positive for marijuana, and that the marijuana weighed 32.37 pounds. Bangs testified that marijuana is a Schedule VI controlled substance.

Pokatilov testified that his business is called AAA Cargo Transport and that his wife works as a dispatcher and negotiates with brokers. He said that brokers had compiled the information about the vehicles on the dispatch sheets. He completed each bill of lading when he picked up a vehicle. He said filling out the bills of lading was redundant when all of the necessary information was on the dispatch sheet. He stated that he picked up six cars in California and Nevada for transport to North Carolina. He explained that he had excessive downtime in Las Vegas because his carrier had broken down. He said he had to order parts, wait for them to be delivered, and wait for the repair.

Pokatilov said that it was not unusual to pick up vehicles from somewhere other than a residence and that loading a vehicle in a parking lot was sometimes necessary to avoid damage to the vehicle. He testified that he did not think it was unusual to be hauling a nineteen-year-old vehicle and that he did not ask why people wanted their vehicles moved. He said that he had the keys to all of the vehicles and inspected them but that he did not look inside containers in the vehicles. After Watkins asked for consent to search the vehicles on the carrier, Pokatilov testified that he told Watkins, "Go for it. They're not my cars. I'm just a transporter." He denied any knowledge of the presence of marijuana in the Tahoe he was transporting, and he claimed that he was not nervous at all. The jury convicted him and sentenced him to five years' probation and a fine of $5,000. This appeal followed.

Pokatilov's first point on appeal is a challenge to the sufficiency of the evidence supporting his conviction. When reviewing the sufficiency of the evidence, we determine whether there is substantial evidence to support the verdict, viewing the evidence in the light most favorable to the State. *Barrera v. State*, 2012 Ark. App. 533, at 4. Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id.* Circumstantial evidence can be sufficient to sustain a conviction when it excludes every other reasonable hypothesis consistent with innocence. *Id.* The question of whether the circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Id.*

Pokatilov was convicted of possession of a Schedule VI controlled substance with the purpose to deliver pursuant to Arkansas Code Annotated section 5-64-436(a) (Supp. 2013). It

is a Class B felony if the person possessed twenty-five pounds or more but less than one-hundred pounds by aggregate weight, including an adulterant or diluent, of a Schedule VI controlled substance. Ark. Code Ann. § 5-64-436(b)(4).

Actual possession of contraband is established if the State can show that an individual had direct physical control over it. *Craig v. State*, 314 Ark. 585, 589, 863 S.W.2d 825, 827 (1993). The State does not have to establish actual physical possession; rather, possession may be proved by constructive possession, which is the control or right to control the contraband. *Polk v. State*, 348 Ark. 446, 452, 73 S.W.3d 609, 614 (2002). Constructive possession may be inferred when contraband is found in a place immediately and exclusively accessible to the accused and subject to his control. *Id.* at 453, 73 S.W.3d at 614. The State satisfies its burden of showing constructive possession if it shows that contraband was found in a location under the accused's dominion and control. *Id.*, 73 S.W.3d at 614.

The majority of Pokatilov's argument under this point on appeal is that there was insufficient evidence presented at trial to prove that he *knowingly* possessed the marijuana. He cites three cases for support: *Fultz v. State*, 333 Ark. 586, 972 S.W.2d 222 (1998); *Darrough v. State*, 322 Ark. 251, 908 S.W.2d 325 (1995); and *Boston v. State*, 69 Ark. App. 155, 12 S.W.3d 245 (2000).

*Fultz* and *Darrough* are distinguishable because they are joint-occupancy cases and require the additional element that the defendant knew the matter possessed was a controlled substance. *Fultz*, 333 Ark. at 596, 972 S.W.2d at 226; *Darrough*, 322 Ark. at 253, 908 S.W.2d at 326. In *Boston*, our court employed a joint-occupancy analysis, including the knowledge element, where the facts established that the appellant was in one of two vehicles traveling

together that were stopped by police and that the appellant had permitted a person he was traveling with to place her suitcase containing marijuana in the trunk of his car. *Boston*, 69 Ark. App. at 161–62, 12 S.W.3d at 249.

The case at bar is not a joint-occupancy case. Pokatilov was not traveling with anyone else, he was not stopped with another vehicle, and he was alone in his carrier when he was stopped. Therefore, constructive possession did not require the additional joint-occupancy element of knowledge. *See Pyle v. State*, 314 Ark. 165, 180, 862 S.W.2d 823, 831 (1995) ("When contraband is found in a place under a defendant's dominion and control a jury may infer constructive possession, but if joint control is established, proof of knowledge of the contraband is required."); *Barrera v. State*, 2012 Ark. App. 533, at 6 (holding that the joint-occupancy cases cited by Barrera were inapposite as he was undisputedly the only person in the vehicle).

The case at bar is very similar to *Barrera*. There a jury convicted Barrera of possession of marijuana with intent to deliver and possession of drug paraphernalia. 2012 Ark. App. 533, at 1. On appeal, Barrera argued that there was no evidence presented to indicate that he knew there was contraband in the truck he was hauling on his flatbed trailer. He contended that the truck he was towing on the trailer was open to access from the general public and that the State failed to present any evidence linking him more definitely to the contraband. *Barrera*, 2012 Ark. App. 533, at 4. We affirmed the jury's convictions, holding that the evidence demonstrated that Barrera had immediate and exclusive access to the truck in which the marijuana was found and that the jury could reasonably conclude that he constructively possessed the contraband. *Id.* at 6. We also held that, to the extent Barrera relied on his

SLIP OPINION

testimony that he was merely driving the truck for a friend and did not know the marijuana was in the truck, the jury was not required to believe his self-serving testimony that he did not know there was marijuana in the truck he was hauling. *Id.* at 6.

Likewise, in the case at bar, Pokatilov was the driver and sole occupant of the carrier hauling the Tahoe that contained the marijuana. He had the keys to the Tahoe, which was immediately and exclusively accessible to him and subject to his dominion and control. He loaded the Tahoe onto the carrier. The dispatch sheet for the Tahoe instructed him to "PLEASE DO A THOROUGH INSPECTION OF THE VEHICLE ON PICKUP." The Tahoe's bill of lading has a handwritten mark on the "driver's signature" line confirming an inspection of the vehicle upon pickup, and Pokatilov testified that he filled out each bill of lading. Pokatilov admitted that there was some "stuff" inside the vehicles. This is substantial evidence that Pokatilov had immediate and exclusive access to the Tahoe in which the marijuana was found; therefore, the jury could reasonably conclude that he constructively possessed the contraband.

In addition to Pokatilov's immediate and exclusive access to the contraband, the jury could have further inferred constructive possession from his suspicious behavior, which included the discrepancies in his paperwork, his nervousness, his bringing up the topic of marijuana, and his equivocal response of "not really" when Watkins asked him if there was anything illegal in any of the vehicles he was transporting. *Barrera*, 2012 Ark. App. 533, at 6 (holding that an accused's suspicious behavior coupled with proximity to the contraband is clearly indicative of possession).

7

SLIP OPINION

Pokatilov argues that his trial testimony provided alternative and innocent explanations for the above-cited evidence. However, these arguments focus on the credibility of the witnesses, and it is well settled that it is the province of the fact-finder to determine the weight of evidence and the credibility of witnesses. *Lockhart v. State*, 2017 Ark. 13, at 3, ___ S.W.3d ___, ___. Viewing the evidence in the light most favorable to the verdict, we hold that there was substantial evidence to support Pokatilov's conviction for possession of marijuana with the purpose to deliver.

Pokatilov's second argument on appeal centers on the circuit court's denial of his proffered jury instruction on constructive possession. A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Vidos v. State*, 367 Ark. 296, 308, 239 S.W.3d 467, 476 (2006). The model instruction is presumed to be accurate, and the party challenging its accuracy must overcome that presumption. *Thomas v. State*, 370 Ark. 70, 84, 257 S.W.3d 92, 103 (2007). "Nonmodel instructions are to be given only when the trial court finds that the model instructions do not accurately state the law or do not contain a necessary instruction." *Bond v. State*, 374 Ark. 332, 340, 288 S.W.3d 206, 212 (2008). We will not reverse a circuit court's decision to give an instruction unless the court abused its discretion. *Vidos*, 367 Ark. at 308, 239 S.W.3d at 476.

At trial, the circuit court read AMI Crim. 2d 64.420 to the jury. This model instruction provided in part that

> [t]here are two kinds of possession, actual and constructive. Actual possession of a thing is direct physical control over it. Constructive possession exists when a person, although not in actual possession of a thing, has the right to control it and intends to do so, either directly or through another person or persons.

At trial, Pokatilov proffered the following instruction:

> In order to prove constructive possession, the State must establish beyond a reasonable doubt that 1) the defendant exercised care, control, and management over the controlled substance, and 2) that the defendant knew the matter possessed was a controlled substance.

The circuit court refused the proffered instruction. On appeal, Pokatilov claims this was an abuse of discretion. He cites *Fultz*, *Darrough*, and *Boston*, and argues that the model instruction was incomplete and inaccurate because it omitted the knowledge requirement. He further claims that this violated his due-process rights.

As previously stated, the case at bar is not a joint-occupancy case; therefore, constructive possession did not require the additional joint-occupancy element of knowledge. Under the facts of this case, the model instruction given to the jury was correct. Furthermore, our supreme court has held that the language contained in other model instructions describing constructive possession, which is identical to the language in AMI Crim. 2d 64.420, accurately states the law. *Walley v. State*, 353 Ark. 586, 601, 112 S.W.3d 349, 357 (2003) (holding that the identically worded model instruction on constructive possession was a "legally sufficient" statement). Accordingly, we hold that the circuit court did not abuse its discretion in rejecting Pokatilov's proffered instruction.

Pokatilov's third point on appeal also involves jury instructions. During deliberations, the jury wrote the following question to the court: "Are we judging on Defendant's knowledge of having the drug or just possession. Actual possession or constructive possession." In response, Pokatilov's counsel asked the court again to give his proffered instruction, arguing that the jury was clearly confused by the model instruction. The court refused, telling the jury to make its decision based on the evidence presented and the instructions submitted. Pokatilov

9

claims that the court abused its discretion in refusing to reinstruct the jury with his proffered instruction. We disagree. As set forth above, the model instruction was not inaccurate. We affirm on this point.

For his final point on appeal, Pokatilov makes five arguments regarding the denial of his motion to suppress. In reviewing the denial of a motion to suppress evidence, this court conducts a de novo review based on the totality of the circumstances, reviewing findings of historical facts for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the circuit court. *Jones v. State*, 2014 Ark. App. 649, at 4, 448 S.W.3d 214, 217–18. We defer to the superior position of the circuit court to pass upon the credibility of witnesses. *Id.*, 448 S.W.3d at 218. We will reverse only if the circuit court's ruling is clearly against the preponderance of the evidence. *Id.*, 448 S.W.3d at 218.

Pokatilov first argues that he has standing to pursue an appeal of the suppression issue because he had a possessory interest as a bailee. The circuit court found that Pokatilov had standing, and the State does not dispute this finding on appeal.

Pokatilov next challenges the circuit court's finding that Watkins had probable cause to make the traffic stop. A police officer may stop and detain a motorist if the officer has probable cause to believe that a traffic violation has occurred. *Freeman v. State*, 2012 Ark. App. 144, at 5, 391 S.W.3d 682, 685. Probable cause is defined as facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected. *Laime v. State*, 347 Ark. 142, 153, 60 S.W.3d 464, 472 (2001). In assessing the existence of probable cause, our review

is liberal rather than strict. *Id.*, 60 S.W.3d at 472. Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation which the officer believed to have occurred. *Id.*, 60 S.W.3d at 472.

In this case, the circuit court found that Watkins had probable cause to stop Pokatilov pursuant to section 27-51-104:

> (a) It shall be unlawful for any person to drive or operate any vehicle in such a careless manner as to evidence a failure to keep a proper lookout for other traffic, vehicular or otherwise, or in such a manner as to evidence a failure to maintain proper control on the public thoroughfares or private property in the State of Arkansas.

> (b) It shall be unlawful for any person to operate or drive any vehicle on the public thoroughfares or private property in the State of Arkansas in violation of the following prohibited acts:

> . . .

> (6) To operate any vehicle in such a manner which would cause a failure to maintain control.

Ark. Code Ann. § 27-51-104(a), (b)(6) (Repl. 2010).

Pokatilov contends that Watkins lacked probable cause to make the stop because there is no video evidence that his carrier crossed the white line; if he crossed the line it was not a violation of section 27-51-104; and if he crossed the line it was reasonable due to the icy roadway.

Here, Watkins testified that he saw Pokatilov violate a traffic law—crossing the white line onto the shoulder multiple times. *Bedsole v. State*, 104 Ark. App. 253, 255, 290 S.W.3d 607, 608 (2009) (noting that the officer's initial traffic stop of the appellant was lawful because the officer witnessed appellant's car cross the fog line onto the shoulder). According to Watkins, this was particularly dangerous, because there was ice on the shoulder—not the roadway.

11

SLIP OPINION

Pokatilov cites no authority for his proposition that video evidence of the traffic violation is required. Therefore, we affirm the circuit court's finding that the stop was based on probable cause.

Before moving to Pokatilov's next argument, we note that the circuit court also found that Watkins had authority, under Arkansas Code Annotated section 23-13-217, to stop Pokatilov's commercial carrier in his capacity as a certified highway officer with the Department of Transportation.[2] Pokatilov does not challenge this finding. When an appellant fails to attack a circuit court's independent, alternative basis for its ruling, we will not reverse. *May v. State*, 2016 Ark. App. 605, at 5, ___ S.W.3d ___, ___.

Pokatilov's third argument under the motion-to-suppress point on appeal involves Arkansas Rule of Criminal Procedure 3.1:

> A law enforcement officer lawfully present in any place, may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct. An officer acting under this rule may require the person to remain in or near such place in the officer's presence for a period of not more than fifteen (15) minutes or for such time as is reasonable under the circumstances.

---

[2]This statute gives authority to certified highway officers to (A) require the operator of motor vehicles, engaged in intrastate or interstate movements and subject to the rules and regulations of the Motor Carriers Act, to stop, exhibit, and submit for inspection all documents required to be carried in that vehicle or by that operator pursuant to the regulations regarding the operator or operators of that vehicle, including, but not limited to, the operator or driver's duty status or hours-of-service records, bills of lading, waybills, invoices, or other evidences of the character of the lading being transported in the vehicle, as well as all records required to be carried by the regulations concerning that vehicle; (B) inspect the contents of the vehicle for the purpose of comparing the contents with bills of lading, waybills, invoices, or other evidence of ownership or of transportation for compensation; and (C) require the operator to submit the vehicle for a safety inspection pursuant to the rules and regulations, if deemed necessary by the officers. Ark. Code Ann. § 23-13-217(c)(1)(A)–(C) (Supp. 2013).

SLIP OPINION

Our criminal rules define "reasonable suspicion" as "a suspicion based on facts or circumstances which of themselves do not give rise to the probable cause requisite to justify a lawful arrest, but which give rise to more than a bare suspicion; that is, a suspicion that is reasonable as opposed to an imaginary or purely conjectural suspicion." Ark. R. Crim. P. 2.1 (2016). Our supreme court has further said that "[w]hether there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity." *Laime*, 347 Ark. at 155, 60 S.W.3d at 473.

Pokatilov contends that his continued detention (almost one hour in length) was not based on reasonable suspicion and violated Rule 3.1. He asserts that Watkins's bases for the detention—that Pokatilov was argumentative, nervous, and unable to present proper paperwork—were not legitimate and "appear to have been manufactured." He maintains that he was not argumentative or nervous and that he presented all the paperwork Watkins requested.

Pokatilov's argument turns on the circuit court's weighing of the evidence and credibility findings. The circuit court did not believe Pokatilov. It believed Watkins's testimony that he had reason to suspect that Pokatilov was engaging in criminal activity (based on his demeanor, responses to questioning, and paperwork). We defer to the superior position of the circuit court to pass upon the credibility of witnesses. *Jones*, 2014 Ark. App. 649, at 4, 448 S.W.3d at 218.

As for the extended length of the stop, it is well settled that as part of a valid traffic stop, a police officer may detain a traffic offender while he completes certain routine tasks and

that those routine tasks are unrelated to a Rule 3.1 detention. *Laime*, 347 Ark. at 157, 60 S.W.3d at 474. Watkins also testified that the detention took extra time because, in his role as a certified highway officer, he had many documents to review in order to perform his inspection of the six vehicles on the carrier. Watkins testified that during the long silences on the video of the stop, he was reviewing Pokatilov's paperwork and typing the inspection report. Considering the totality of the circumstances, we hold that the circuit court did not err in finding that there was reasonable suspicion of a felony sufficient to justify the continued detention.

Pokatilov's fourth motion-to-suppress argument is that his continued detention "is equivalent to an arrest" and that pretextual arrests are forbidden.[3] However, Pokatilov fails to develop or cite convincing authority for this argument. This court does not research or develop arguments for appellants. *Eastin v. State*, 2010 Ark. 275, at 5. Therefore, we affirm.

Pokatilov's fifth and final argument under the motion-to-suppress point on appeal is that the circuit court erred in finding that Pokatilov's consent was freely given. He argues that "it was obvious to [him] that he would not be able to leave until a search occurred."

The test for a valid consent to search is that the consent be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *Freeman v. State*, 2012 Ark. App. 144, at 6, 391 S.W.3d 682, 685. The validity of consent is a factual question, and the circuit court's finding of fact will not be reversed unless it is shown to be clearly erroneous. *Gonder v. State*, 95 Ark. App. 144, 150–51, 234 S.W.3d 887, 893 (2006). When the testimony of an officer and an appellant are in direct conflict on the issue of consent to search, the decision

---

[3]Pokatilov concedes that in Arkansas, pretextual stops are permissible. *State v. Harmon*, 353 Ark. 568, 576, 113 S.W.3d 75, 79–80 (2003).

amounts simply to the question of which witness to believe, which is a decision left to the trier of fact. *Nelson v. State*, 365 Ark. 314, 320, 229 S.W.3d 35, 41 (2006).

The transcript of the video shows that when Watkins asked Pokatilov whether he minded if Watkins searched the vehicles on the carrier, Pokatilov responded, "Nope, not at all." At the suppression hearing, Pokatilov testified that he consented to the search because he did not feel like he was free to leave until his vehicle was searched. At trial, he testified that when Watkins asked for consent to search the vehicles, Pokatilov said, "Go for it. They're not my cars. I'm just a transporter." He explained that he was not nervous and did not feel he had anything to hide.

Pokatilov's testimony is inconsistent. His statement in the video and his testimony at trial demonstrate that his consent was voluntarily given. However, at the suppression hearing and on appeal, he claims his consent was not voluntary. Watkins's testimony was not inconsistent—he testified at the suppression hearing and at trial that Pokatilov consented to the search. Credibility of the witnesses is an issue for the finder of fact. *Menne v. State*, 2012 Ark. 37, at 8, 386 S.W.3d 451, 456. Therefore, we hold that the circuit court did not clearly err in determining that the evidence proved that Pokatilov voluntarily consented to the search. We affirm the circuit court's denial of Pokatilov's motion to suppress.

Affirmed.

GRUBER, C.J., and GLADWIN, HARRISON, WHITEAKER, and BROWN, JJ., agree.

VIRDEN, KLAPPENBACH, and HIXSON, JJ., dissent.

**BART F. VIRDEN, Judge, dissenting.** I respectfully dissent on the limited issue of whether Mr. Pokatilov was entitled to a jury instruction regarding his knowledge of the

contraband found in a vehicle he was hauling on his transport. Specifically, I disagree with the resulting state of the law and potential for abuses. I feel that, in any common-carrier or commercial-vehicle situation, when the driver is charged as Mr. Pokatilov was, the jury should be instructed in accordance with a joint-occupancy situation. Granted, the actual term "joint occupancy" does not describe this situation, i.e., Mr. Pokatilov was the only one in the truck and had the keys to the vehicles on the trailer; but that analysis is currently the only way to instruct the jury on the requirement of knowledge of the contraband. If one reads "joint occupancy" to mean that more than one person was responsible for the cargo and its contents being transported, the cases can be read in complete harmony. The nearest case on point is *Boston v. State*, 69 Ark. App. 155, 12 S.W.3d 245 (2000), where this court concluded that

> [t]he *State's* argument that, because the vehicles were traveling together, the jury could have inferred that the appellant was an additional person in control of the contraband, is not persuasive. The *State* would essentially have *us* remove the knowledge requirement from the constructive possession analysis by holding that when a driver agrees to carry a parcel that belongs to another person in his car, and the parcel is later found to contain contraband, this conduct is sufficient to demonstrate the driver knows the container holds contraband. We decline to so hold. While this conduct may be sufficient to demonstrate control of the container, it is not sufficient to demonstrate knowledge of the contents of the container, and our case law clearly requires the *State* must prove both elements to show constructive possession.

*Id.* at 160, 12 S.W.3d at 248–49 (citations omitted) (emphasis added).

In *Boston,* the defendant was driving a car, and another person not in the car with the defendant had placed her suitcase containing marijuana in the trunk of the defendant's car. Although that other person was not in the defendant's car, she was found to have been traveling with the defendant. The difference is merely one of degree. Unless the driver has complete and total control of the contents in his or her vehicle, the State should be required to prove knowledge, and the jury should be so instructed.

16

In this case, the jury might well have found that Mr. Pokatilov did have knowledge, but the jury was not instructed on that point. Counsel for Mr. Pokatilov correctly predicted that not instructing the jury on knowledge invited confusion:

DEFENSE COUNSEL: And specifically, the real issue in this case is whether the Defendant knew the matter possessed was a controlled substance. And, as I say, that's the issue. This is a statement of the law. The AMCI instruction by itself, 64.420, doesn't say that, or doesn't accurately say that. And in as much as the Arkansas Supreme Court twice and the Court of Appeals once has specifically said this. We know it's the law, and we submit that this is something the jury should have in order to understand what the State's burden of proof is.

By clarifying that every common-carrier case with similar facts be treated as a joint-occupancy case for purposes of instructing the jury, we would be giving the jury the tools needed to make the required findings of fact.

Certainly our facts are different from *Boston*, *supra*, but what about any other commercial-truck driver? Are we going to say those drivers are in sole possession and control and therefore impart a form of strict liability? Or are we going to allow the jury to determine— as was requested by this jury—whether the driver knew of the contraband?

The drivers and companies are protected from civil forfeiture in this situation by a specific statute. Arkansas Code Annotated section 5-5-201(b)(1) (Repl. 2013) provides that "[n]o conveyance used by any person as a common carrier in the transaction of business as a common carrier is subject to forfeiture under this subchapter unless it appears that the owner or other person in charge of the conveyance was a consenting party or privy to the commission or attempt to commit the offense."

The bar should not be lower to prove a criminal offense.

SLIP OPINION

I am authorized to say that Judges Klappenbach and Hixson join in this dissent.

*Jeff Rosenzweig*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Amanda Jegley*, Ass't Att'y Gen., for appellee.