SLIP OPINION  Cite as 2017 Ark. App. 427

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CR–12–950

| | | |
|---|---|---|
| | | Opinion Delivered: September 6, 2017 |
| THOMAS RAINEY | APPELLANT | APPEAL FROM THE DALLAS COUNTY CIRCUIT COURT [NO. 20CR-10-26] |
| V. | | |
| | | HONORABLE DAVID CLINGER, JUDGE |
| STATE OF ARKANSAS | APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Thomas Rainey appeals after a Dallas County jury found him guilty of possession of cocaine with intent to deliver and possession of drug paraphernalia. Appellant was sentenced to an aggregate term of 480 months' imprisonment. Appellant lists two points on appeal: (1) the trial court erred in denying his motion to suppress evidence and (2) the trial court erred in denying his motion to suppress statement. Because of briefing deficiencies, we previously ordered rebriefing and appointed new counsel. *See Rainey v. State*, 2016 Ark. App. 505; *Rainey v. State*, 2015 Ark. App. 341. Appellant has now filed a compliant substituted brief. We affirm.

I. *Relevant Facts*

In summary, appellant's fiancée, Elaine Meads,[1] was stopped by law enforcement with appellant sitting in the passenger seat. A search of the vehicle discovered cocaine and drug paraphernalia under appellant's seat. Appellant was arrested and subsequently signed a waiver-of-*Miranda*-rights form and gave a voluntary statement. In his voluntary statement, appellant stated that the drugs found in Meads's vehicle were his.

Appellant was ultimately charged with possession of a controlled substance with intent to deliver (cocaine), possession of drug paraphernalia, and a prior-conviction enhancement. Appellant filed two relevant pretrial motions: including a motion to suppress evidence and a motion to suppress statement. In his motion to suppress evidence, appellant argued that the evidence seized during the search of Meads's vehicle and any subsequent lab-analysis reports regarding the evidence must be suppressed because the search was in violation of his constitutional right to be free from unreasonable searches and seizures. Appellant contended that the search was conducted without a search warrant or his consent and that law enforcement lacked probable cause to stop or search the vehicle. In his motion to suppress statement, appellant contended that his signed statement that was made after his arrest should be suppressed because it was taken in violation of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and that "any statement the State attributes to [him was] a fabrication."

---

[1]At the motion-to-suppress hearing, it was clarified that Meads was appellant's fiancée at the time of the stop. However, there are several references throughout the record in which Meads is referred to as appellant's wife.

The trial court held hearings on appellant's pretrial motions. Sergeant Chance Dodson, employed with the Fordyce Police Department, testified that he had received a call from a reliable informant, José Ross, stating that appellant would be a passenger in a late 1980s Buick LaSabre with narcotics in the vehicle. The informant further stated that the vehicle had rust on the hood and trunk and that a female would be driving the vehicle from Highway 8 to appellant's residence located off Highway 167. Sergeant Dodson testified that he had previously dealt with the informant and that he had found him to be reliable. Sergeant Dodson further testified that the informant did not receive anything for the information and that, although the informant had previous convictions, a background check did not indicate that he was on parole or probation. Consequently, Sergeant Dodson asked Chief Deputy Stan McGahee for his assistance in locating the vehicle.

Sergeant Dodson testified that he had observed a vehicle matching the informant's description and that he knew appellant by sight based on previous contacts with appellant. Sergeant Dodson further testified that he had initiated a traffic stop only after he observed that the driver failed to use her turn signal. Sergeant Dodson stated that as soon as the vehicle had come to a stop, appellant jumped out of the vehicle on the passenger side into a ditch and that appellant began yelling that he had a warrant. Sergeant Dodson stated that he had told appellant to get back in the vehicle. However, because appellant's behavior made Sergeant Dodson nervous, Sergeant Dodson placed appellant in handcuffs and placed him in his patrol car for safety concerns. After running appellant's information, Sergeant Dodson later discovered that appellant was mistaken and that he did not have any active warrants for his arrest.

Sergeant Dodson testified that while he had been interacting with appellant, Chief Deputy McGahee had been conversing with the driver, Elaine Meads. Chief Deputy McGahee told Sergeant Dodson that the driver had given her consent to search the vehicle. Sergeant Dodson testified that he thereafter independently received consent to search from Meads. Meads told Sergeant Dodson that appellant had a plastic bag when he entered her vehicle and that he had placed the plastic bag under his seat. Sergeant Dodson testified that he had found a plastic bag underneath the passenger seat as Meads had told him. The plastic bag contained two baggies of what appeared to be cocaine, electronic scales, and a Crown Royal bag containing additional items. As a result, appellant was arrested, and Sergeant Dodson transported appellant to the police station.

Sergeant Dodson testified that he had advised appellant of his *Miranda* rights both orally as well as in writing. Appellant signed a form that he was willing to waive his rights and make a statement. Although Sergeant Dodson testified that he did not remember who wrote the actual statement, appellant signed the voluntary statement. Both the *Miranda*-rights form and the voluntary statement were admitted into evidence without objection at the suppression hearing. The pertinent language written on the voluntary statement was as follows:

> ON THIS DATE 4-9-10 I, Thomas Rainey, DO HEREBY SWEAR THAT THE FACTS THAT I AM GIVING IN THIS STATEMENT ARE THE WHOLE TRUTH AS KNOWN TO ME AND HAVE BEEN ADVISED OF MY MIRANDA RIGHTS AND AM GIVING THIS STATEMENT OF MY OWN FREE WILL WITHOUT COERCION, PROMISES OR THREATS OF ANY KIND.

> The Drugs Found in my Wife's CAR WAS Mine.

On cross-examination, Sergeant Dodson testified that the interview was not recorded but that Officer Charles Steele signed the *Miranda*-rights form as a witness. Additionally, after reviewing the handwriting of the voluntary statement, Sergeant Dodson stated that he believed appellant had asked him to write out the statement for him and then appellant signed it.

Chief Deputy McGahee testified that he had assisted Sergeant Dodson during the stop. He testified that they had stopped the vehicle because the driver failed to use her turn signal. Chief Deputy McGahee had difficulty remembering certain specific details about the chain of events as asked by appellant. However, Chief Deputy McGahee did recall making contact with the driver and did not think that he had issued Meads a citation for not using her turn signal. Chief Deputy McGahee additionally testified that he had called Officer Jonathan Bailey with a canine unit to the scene at some point and that he had overheard Sergeant Dodson ask the driver for consent to search the vehicle. Chief Deputy McGahee indicated several times throughout his testimony that Sergeant Dodson had found the contraband in the vehicle and that Officer Bailey had not located any additional contraband during the subsequent canine search. Chief Deputy McGahee indicated that it was his recollection that the canine unit had been called before any contraband had been found but that Officer Dodson had found the contraband prior to the canine search.

Elaine Meads testified that she had been stopped by Chief Deputy McGahee. However, she denied that he asked her for anything or that she gave consent to search her vehicle. Meads testified that Sergeant Dodson later asked her for her name and Social Security number but that he did not ask her for consent to search her vehicle or belongings.

Instead, she testified that Sergeant Dodson just searched through the vehicle and her purse without her consent. Meads further testified that appellant had not jumped out of the vehicle but had simply gotten out of the vehicle to "see what was going on." Meads testified that Sergeant Dodson first searched her vehicle but failed to find anything, then the canine search was conducted without finding anything, and finally Sergeant Dodson searched the vehicle once again, finally finding the contraband.

Following the pretrial hearings, the trial court filed an order denying appellant's motion to suppress the evidence, finding that "probable cause existed for the stop and search in this matter. The evidence resulting from such search is admissible." The trial court additionally filed a separate order denying appellant's motion to suppress statement. In this order, the trial court made the following findings:

> Based upon the evidence before the Court and the arguments of the parties, the Court finds that the Defendant in this matter was informed of his rights as required under Miranda, he signed a waiver waiving those rights and, thereafter, made a statement to the police. The statement in question is admissible. Accordingly, [appellant's] motion to Suppress Statement is hereby denied.

Based on the trial court's orders, both the evidence seized and appellant's statement were introduced during appellant's trial, and the jury found appellant guilty of possession of a controlled substance with intent to deliver and possession of drug paraphernalia. Appellant was sentenced to an aggregate term of 480 months' imprisonment without any enhancements. Appellant subsequently filed a motion to set aside the verdict and/or a motion for new trial and other posttrial motions. The trial court denied all appellant's posttrial motions but ordered that an amended sentencing order be entered to correct any errors. After a second amended sentencing order was filed, this timely appeal followed.

SLIP OPINION

II. *Motion to Suppress Evidence*

On appeal, appellant does not contest the sufficiency of the evidence presented at trial to support his convictions. Instead, appellant first argues that the trial court erred in denying his motion to suppress the evidence. In reviewing a trial court's denial of a motion to suppress, we conduct a de novo review based on the totality of the circumstances, reviewing findings of historical fact for clear error and determining whether those facts give rise to reasonable suspicion or probable cause, giving due weight to inferences drawn by the trial court and proper deference to the trial court's findings. *Yarbrough v. State*, 370 Ark. 31, 257 S.W.3d 50 (2007). We defer to the superior position of the trial court to evaluate the credibility of witnesses at a suppression hearing, and any conflicts in the testimony of witnesses are for the trial court to resolve. *Spraglin v. State*, 2015 Ark. App. 166. We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Menne v. State*, 2012 Ark. 37, 386 S.W.3d 451.

Appellant specifically argues that the trial court erred in denying his motion to suppress the evidence because (1) Sergeant Dodson's testimony lacked credibility, (2) neither the informant nor the informant's information was reliable, (3) Sergeant Dodson's seizure of appellant was unreasonable, (4) Sergeant Dodson did not have Meads's consent to search her vehicle, (5) Sergeant Dodson did not have reasonable suspicion to continue to seize appellant after the initial search failed to find any drugs in the vehicle, (6) Sergeant Dodson lacked reasonable suspicion to conduct a canine search or conduct a third search after the canine search did not locate any contraband, and (7) the length of appellant's detention was not reasonable. Appellant's arguments, however, are without merit.

SLIP OPINION

In order for a police officer to make a traffic stop, the officer must have probable cause to believe that the driver of the vehicle has violated a traffic law. *Sims v. State*, 356 Ark. 507, 157 S.W.3d 530 (2004); *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001); *Travis v. State*, 331 Ark. 7, 959 S.W.2d 32 (1998). Probable cause is defined as "facts or circumstances within a police officer's knowledge that are sufficient to permit a person of reasonable caution to believe that an offense has been committed by the person suspected." *Burks v. State*, 362 Ark. 558, 560−61, 210 S.W.3d 62, 64 (2005). In assessing the existence of probable cause, our review is liberal rather than strict. *Laime, supra.* Whether a police officer has probable cause to make a traffic stop does not depend on whether the driver was actually guilty of the violation which the officer believed to have occurred. *Id.*

Appellant first argues that Sergeant Dodson's testimony lacked credibility regarding the stop based on the differing accounts of Meads and Chief Deputy McGahee. However, we defer to the superior position of the trial court to evaluate the credibility of witnesses at a suppression hearing, and any conflicts in the testimony of witnesses are for the trial court to resolve. *Spraglin, supra.* Sergeant Dodson and Chief Deputy McGahee testified that Meads failed to use her turn signal. It was within the trial court's province whether to find this testimony credible. Thus, we cannot say that the trial court's finding that law enforcement had probable cause to stop Meads for violating a traffic law was clearly against the preponderance of the evidence.

Appellant further argues that Sergeant Dodson lacked reasonable suspicion to seize him and search the vehicle because the informant as well as the information provided by the informant was unreliable. However, the informant's reliability is irrelevant because law

enforcement testified that Meads was stopped for violating a traffic law and was not based on the information provided by the informant. Furthermore, even if the stop and detention could be determined to be pretextual based on the information supplied by the informant, our supreme court has held that it will "not allow a police officer's ulterior motives to serve as the basis for holding a traffic stop unconstitutional so long as it was a valid stop—meaning, the officer had the proper probable cause to make the traffic stop." *State v. Mancia-Sandoval*, 2010 Ark. 134 at 6, 361 S.W.3d 835, 839; *State v. Harmon*, 353 Ark. 568, 113 S.W.3d 75 (2003). Therefore, the traffic stop was valid because Meads failed to use her turn signal, and even if appellant's assertion was true that the information provided by the informant was unreliable, which is not our holding, it would not warrant suppression of the evidence.

Regarding appellant's arguments that Sergeant Dodson unlawfully continued to detain him, we hold that his arguments are also without merit. Arkansas Rule of Criminal Procedure 3.1 (2016) permits a law enforcement officer to stop and detain any person who he or she reasonably suspects is committing, has committed, or is about to commit a felony or a misdemeanor involving danger to persons or property. Whether there is reasonable suspicion depends on whether, under the totality of the circumstances, the police have "specific, particularized, and articulable reasons indicating that the person may be involved in criminal activity." *Laime*, 347 Ark. at 155, 60 S.W.3d at 473. Furthermore, Arkansas Code Annotated section 16–81–203 (Repl. 2005) lists fourteen factors to be considered in determining whether an officer has reasonable suspicion, including the demeanor of the suspect, the gait and manner of the suspect, any knowledge the officer may have of the suspect's background or character, and any overheard conversation of the suspect. Here,

appellant immediately jumped out of the vehicle and yelled that he had a warrant after a valid traffic stop. Furthermore, Sergeant Dodson testified that he knew appellant, that he had received information from a reliable informant that appellant had drugs in the vehicle, and that appellant's demeanor continued to make him nervous. Furthermore, Meads had stated to the officer that appellant had placed a plastic bag under his seat after he had entered her vehicle. Therefore, under the totality of the circumstances, we hold that appellant's continued detention was not unlawful.

Appellant additionally argues that the trial court erred in denying his motion to suppress evidence because Meads had testified that she had not consented to the search of the vehicle. Generally, a search warrant and probable cause are prerequisites to a search. *Freeman v. State*, 2012 Ark. App. 144, 391 S.W.3d 682. However, an exception exists when or if the search is conducted pursuant to consent, which must be established by clear and convincing evidence that it was obtained freely, voluntarily, and without implied or actual duress or coercion. Ark. R. Crim. P. 11.1. According to Arkansas Rule of Criminal Procedure 11.2, the consent to a search of a vehicle must be obtained by the person registered as its owner or by the person in apparent control of its operation and contents at the time consent is given. A consensual search shall not exceed, in duration or scope, the limits of the consent given, and where there are no limits placed on the search, the consent to search includes any containers found in the vehicle. Ark. R. Crim. P. 11.3. The test for a valid consent to search is that the consent be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *Freeman*, *supra*. Additionally, we will not

10

reverse a trial court's finding of fact on the validity of consent unless the finding is clearly wrong. *Id*.

Here, based on Sergeant Dodson's testimony, he had independently verified that Meads had consented to the search of the vehicle after Chief Deputy McGahee had already told him that Meads had consented to a search of her vehicle. An officer may detain a driver as part of a valid traffic stop while completing certain routine tasks, including checking the driver's license, criminal history, and writing of a citation or warning. *Freeman*, *supra*. During that process, an officer may ask questions about the driver's destination, purpose of the trip, and whether the officer may search the vehicle. *Id*. Furthermore, an officer may act on whatever information is volunteered. *Id*. Sergeant Dodson testified that Meads had granted her consent and that she had additionally told him that appellant had entered her vehicle with a plastic bag. Therefore, Meads's consent was obtained prior to the completion of the traffic stop and was freely given according to Sergeant Dodson. While appellant argues that Sergeant Dodson's version of events was not credible, it is a long-standing rule that it is the province of the trial court, not this court, to determine the credibility of the witnesses. *Id*. We affirm the trial court's denial of suppression on the basis that the search of the vehicle was consensual following a valid traffic stop; therefore, it is unnecessary for us to address appellant's remaining arguments regarding the suppression of the evidence. *See Webb v. State*, 2011 Ark. 430, 385 S.W.3d 152. Thus, after a de novo review based on the totality of the circumstances, we hold that the trial court did not clearly err in denying appellant's motion to suppress evidence.

### III. *Motion to Suppress Statement*

In appellant's second point on appeal, he argues that the trial court clearly erred in denying his motion to suppress statement. Appellant specifically argues that the statement he made was the fruit of the poisonous tree based on the constitutional violations he argued above and because the State failed to prove that there was a break in the causal connection between the statement and those violations. Because appellant's constitutional rights were not violated for the reasons given above, appellant's arguments are without merit.

A statement made while in custody is presumptively involuntary, and the burden is on the State to prove by a preponderance of the evidence that a custodial statement was given voluntarily. *Bell v. State*, 371 Ark. 375, 266 S.W.3d 696 (2007). In *Grillot v. State*, 353 Ark. 294, 107 S.W.3d 136 (2003), our supreme court clarified the appropriate standard of review for cases involving a trial court's ruling on the voluntariness of a confession—we make an independent determination based on the totality of the circumstances. We review the trial court's findings of fact for clear error, and the ultimate question of whether the confession was voluntary is subject to an independent, or de novo, determination by this court. *Clark v. State*, 374 Ark. 292, 287 S.W.3d 567 (2008).

In order to determine whether a waiver of *Miranda* rights is voluntary, knowing, and intelligent, this court looks to see if the statement was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Flanagan v. State*, 368 Ark. 143, 243 S.W.3d 866 (2006). To make this determination, we review the totality of the circumstances surrounding the waiver including the age, education, and intelligence of the accused; the lack of advice as to his or her constitutional rights; the length of the detention;

the repeated and prolonged nature of the questioning; the use of mental or physical punishment; and statements made by the interrogating officers and the vulnerability of the defendant. *Id.* We will reverse a trial court's ruling on this issue only if it is clearly against the preponderance of the evidence. *Id.* The credibility of witnesses who testify at a suppression hearing about the circumstances surrounding an appellant's custodial confession is for the trial court to determine, and this court defers to the trial court in matters of credibility. *Thompson v. State*, 2015 Ark. App. 275, 461 S.W.3d 368.

According to Sergeant Dodson's testimony at the suppression hearing, which the trial court credited, appellant was lawfully detained after he jumped out of the passenger side of the vehicle and yelled that he had a warrant. Based on his subsequent demeanor, Sergeant Dodson placed him in handcuffs and had him sit in his patrol car for safety reasons. Sergeant Dodson found contraband under appellant's seat after Meads had consented to a search of the vehicle, and appellant was arrested. Appellant subsequently signed a *Miranda*-rights form waiving his right to remain silent after being advised of his rights both orally and in writing, and he voluntarily signed a statement that the drugs found in the vehicle were his. As such, after reviewing the totality of circumstances, we affirm the trial court's denial of appellant's motion to suppress statement.

Affirmed.

GLOVER and WHITEAKER, JJ., agree.

*Lightle, Raney, Streit & Streit, LLP*, by: *Jonathan R. Streit*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Christian Harris*, Ass't Att'y Gen., for appellee.